Daron Tooch (*pro hac vice* pending)
**KING & SPALDING LLP**
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Telephone:    +1 213 443 4355
Facsimile:    +1 213 443 4310
Email: dtooch@kslaw.com

*in association with*

Sara R. Witthoft (State Bar No. 023521)
Matthew T. St. Martin (State Bar No. 034037)
**THORPE SHWER, P.C.**
3200 North Central Avenue
Suite 1560
Phoenix, AZ 85012
Telephone:    +1 602-682-6101
Facsimile:    +1 602-682-6149
Email: switthoft@thorpeshwer.com
Email: msmartin@thorpeshwer.com
Email: docket@thorpeshwer.com

*Attorneys for Plaintiffs Advanced Reimbursement
Solutions, LLC, and Patients 1-513.*

# IN THE UNITED STATES DISTRICT COURT

## FOR DISTRICT OF ARIZONA

| | |
|---|---|
| ADVANCED REIMBURSEMENT SOLUTIONS, LLC, AND PATIENTS 1-513 | Case No. |
| | **COMPLAINT FOR:** |
| Plaintiffs, | |
| | **1. VIOLATIONS OF ERISA (29 U.S.C. § 1132(A)(1)(B))** |
| v. | **2.  BREACH OF CONTRACT** |
| | **3.  UNJUST ENRICHMENT** |
| THE AETNA LIFE INSURANCE COMPANY; AETNA INCORPORATED; AETNA HEALTH INCORPORATED; and DOES 1-50 | |
| Defendants. | |

Plaintiffs Advanced Reimbursement Solutions, LLC ("ARS"), and Patients 1–513 by and through their authorized representative and attorney-in-fact Advanced Reimbursement Solutions, LLC, complain and allege as follows:

9122496

# I.

## SUMMARY OF ALLEGATIONS

1.      This action is brought on behalf of patients who receive their health insurance from Defendants Aetna Life Insurance Company, Aetna Incorporated, and Aetna Health Incorporated (collectively, "Aetna") or from self-funded ERISA plans for whom Aetna provides administrative services.

2.      The patient plaintiffs all received non-surgical services (principally pain management services) at certain Outpatient Treatment Centers ("OTCs").  The OTCs were North Phoenix OTC, LLC, NorthView Pain Treatment Center, PLLC, West Valley OTC, LLC, Alliance Pain Solutions, LLC, Arizona Pain Ventures, LLC, Valley Pain Centers, LLC, Metro OTC, LLC, Valley Pain Centers of Arizona, LLC, AZ Pain Solutions, LLC, Lakeshore Interventional Treatment Center, LLC, Arrowhead Outpatient Treatment Center, LLC, Avonhealth, LLC, Desert Ridge Facility, LLC, Gilbert Facility Group, LLC, Mesa Outpatient Treatment Center, LLC, North Valley Pain Center, PLLC, Phoenix Pain Treatment Centers, PLLC, Surprise Facility Group, LLC, Tempe Outpatient Treatment Center, LLC, Valley Pain Center of Peoria, LLC, Valley Pain Centers of Peoria, LLC, and Valley Pain Intervention Center, LLC.

3.      Before providing medical treatment to the Patients, the OTCs contacted Aetna to verify that the Patient was in fact covered by a plan administered by Aetna and to seek authorization to provide such treatment.  For each of the Patient claims at issue, Aetna, either on behalf of itself or the self-funded plans, informed the OTCs that the Patient was covered, and either authorized the OTCs to provide medical services, or informed the OTCs that no authorization was necessary.

4.      For each of the Patient claims at issue, ARS billed Aetna for the services provided by the OTCs at the OTCs' customary billing rates.

5.      Notwithstanding Aetna's representation to the OTCs that they were authorized to provide medical treatment to the Patients or that such authorization was unnecessary, Aetna, either on behalf of itself or the Other Payors, denied payment on the

9122496

bills submitted by ARS.   According to Aetna's explanation of benefits documents ("EOBs") submitted to ARS, Aetna's denials were based on its determination that the OTCs "did not meet provider requirements."   At no time before submitting these EOBs to ARS did Aetna inform ARS, the OTCs, or the Patients that Aetna would refuse to pay for the medical services provided by ARS on the grounds that the OTCs "did not meet provider requirements" or on any other grounds.

6.      On many occasions over a number of years, Aetna has paid the OTCs for the very same services that are issue in this case, and did not deny the claims on the grounds that the Outpatient Treatment Centers "did not meet provider requirements."   Furthermore, other insurance companies and payors, both on behalf of themselves for fully insured members and on behalf of self-funded ERISA plans, have paid the OTCs for the very same services that are issue in this case, and did not deny the claims on the grounds that the Outpatient Treatment Centers "did not meet provider requirements."

7.      Aetna has violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002 *et seq.*; and the laws of the State of Arizona by improperly denying payment for the medically necessary services that the OTCs provided to the patient plaintiffs.

## II.

## JURISDICTION AND VENUE

8.      Plaintiffs bring this action pursuant to ERISA and pursuant to the laws of the State of Arizona.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States; and pursuant to 29 U.S.C. § 1132(e)(1), because the action seeks to enforce rights under ERISA; and supplemental jurisdiction pursuant to 28 U.S.C. § 1367, because there is a common nucleus of facts relating to Defendants' wrongful behavior.

9.      This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District.

### III.

### THE PARTIES

**Plaintiffs**

Advanced Reimbursement Solutions

10.     ARS is a healthcare services organization that provides billing and other back-office services to healthcare providers in the State of Arizona. By and through its contracts with the OTCs, ARS is, and at all relevant times was, authorized to bill health insurance plans like Defendants for the services provided by the OTCs to members, insureds, and beneficiaries of such health insurance plans, to collect moneys owed by such plans on the OTCs' behalf, and, if necessary, to bring legal proceedings in order to collect any sums owed to the OTCs by health insurance plans like Defendants.

Patient Plaintiffs

11.     Plaintiff Patients Does 1-513 (the "Patients") are members, beneficiaries, and/or insureds of health plans offered by the Aetna Defendants or beneficiaries of ERISA plans for which the Aetna Defendants are the named or de facto administrators.  Each of the Patients sought and received medical treatment from the OTCs for which the Aetna Defendants failed and refused to pay the amounts owed pursuant to their respective health insurance plans offered, insured, and/or administered by the Aetna Defendants.  In order to protect their private health information subject to confidentiality under HIPAA, the true names of each of the Patients are not included in this Complaint.  A listing of the identities of the Patients along with the dates of the services provided by the OTCs will be provided to the Aetna Defendants concurrently with the filing of this Complaint or soon thereafter when counsel for Aetna has been identified.

**Standing**

12.     ARS has standing to bring the ERISA claims in the names of the Patients as the Authorized Representative, pursuant to the ERISA regulations, 29 C.F.R. § 2560.503.1(b)(4).  ARS also has standing to bring the ERISA claims in the names of the Patients based on the Power of Attorney that the Patients provided to ARS.

4

9122496

13.    An example of the Assignment of Benefits that all the Patients provided to the OTCs is attached hereto as **Exhibit A**.  The Assignment of Benefits all included the following provision:

> **Appointment as Authorized Representative And Right to Sue:**  I hereby designate  Providers'[]  designated  billing  company  ("Advanced Reimbursement  Solutions,  LLC"  or  "ARS")  as  my  duly  authorized representative  in  connection  with  all  matters  arising  from  or  relating  to Services,  Rights  and  Health  Coverage,  such  that  ARS  completely  and without reservation stands in my shoes and takes my place for all purposes, and is granted absolute power and legal authority to do, seek, claim, appeal or obtain anything that I would have been entitled to do, seek, claim, appeal or obtain in my own capacity pursuant to or in connection with the Services, Rights  or  Health  Coverage,  in  any  legal,  private,  administrative,  formal  or informal process or forum whatsoever and without limitation, including any internal or external appeal, review, grievance or any other process, procedure or entitlement under any Health Coverage.

14.    In addition, each of the Patient Plaintiffs signed a second document, entitled Authorization  of  Representation  and  Specific  Power  of  Attorney,  a  copy  of  which  is attached hereto as **Exhibit B**.

15.    The Authorization of Representation and Specific Power of Attorney form again appointed ARS as the Patient Plaintiff's Authorized Representative to take various actions on behalf of the Patient Plaintiff, including, but not limited to, "(d) to pursue any and all legal action and all legal remedies to which I am entitled regarding such claims including (but not limited to) recovering any underpayments or denials of payments, including claims for interest[], penalties, breach of fiduciary duty, and punitive damages; (e) to resolve or settle any claims on my behalf; (f) to receive payments from all governmental and commercial payers on my behalf, and; (g) to retain an attorney to represent my Authorized Representative."

9122496

16.    The Authorization of Representation and Specific Power of Attorney form further included a Specific Power of Attorneys, which provided ARS to pursue underpayments or denied benefits on behalf of the Patient Plaintiffs.

**A.    The Aetna Defendants**

17.    Plaintiffs are informed and believe that Defendants The Aetna Life Insurance Company, Aetna Incorporated, and Aetna Health Incorporated (collectively, "Aetna") are corporations duly organized and existing under the laws of the State of Arizona and are authorized to transact, and are in fact transacting, the business of insurance in Arizona. Plaintiffs are also informed and believe that beneficiaries, members, and/or insureds of insurance plans underwritten, administered, and/or sold by Aetna, including the Patients, reside in Arizona and receive treatment at the OTCs.

**B.    Other Payors**

18.    Plaintiffs are informed and believe that Aetna administers claims or benefit plans for other payors whose insureds are treated by the OTCs (the "Other Payors"). Plaintiffs are informed and believe that Aetna is the agent for the Other Payors.  Plaintiffs are informed and believe that Aetna plays a core role for the Other Payors in that it effectively controls the decision whether to honor or deny a claim under the plans, or the amount of the payment under the plans.  Plaintiffs are informed and believe that Aetna functions as the plan administrator in: (a) authorizing the provision of services to the Other Payors' members; (b) receiving bills from providers; (c) pricing bills from providers; (d) processing and administering the bills and appeals; (e) approving or denying the bills; (f) deciding not to arrange for transfer of members to in-network hospitals for post-stabilization services; (g) directing whether and how to pay bills; (h) issuing remittance advices and explanations of benefits on the bills; (i) communicating with providers regarding bills and services; (j) communicating with members regarding the bills and services; and (k) issuing payment.  Plaintiffs are informed and believe that Aetna is in possession, custody, or control for the Other Payors of all facts, information and data concerning and related to the authorization, processing, pricing and payment of all bills

9122496

submitted by ARS for services rendered to patients by the OTCs whose plans are administered by Aetna.

19.     Plaintiffs are informed and believe that some of the Other Payors are plans regulated by ERISA.

20.     Plaintiffs are further informed and believe that, with respect to self-funded ERISA plans which have not specifically designated a plan administrator, Aetna functions as the *de facto* plan administrator, or as the co-administrator because, *inter alia*, it has provided plan documents to participants, received benefit claims, evaluated and processed those claims, made benefit determinations, made and administered benefit payments, and handled appeals of benefit determinations.  Moreover, Plaintiffs are informed and believe that, even with respect to self-funded ERISA plans which have not specifically designated a plan administrator, Aetna has been specifically designated as the claims administrator, and has been delegated the responsibilities described above.  Specifically, with respect to all of the ERISA claims at issue herein, including with respect to self-funded plans which have not been named as defendants in this action, Plaintiffs are informed and believe that Aetna:

a)      drafted and provided plan members with plan documents;

b)      operated a centralized verification and authorization telephone number which handled calls for members of the self-funded plans, including plans that have not been named as defendants in this Complaint;

c)      authorized the OTCs to provide medical services to beneficiaries of the ERISA plans;

d)      received and processed electronic bills from the OTCs for claims for members of the self-funded plans, including plans that are not named as defendants in this Complaint;

e)      communicated with ARS and the OTCs on behalf of the ERISA plans (and additional self-insured plans that are not named as defendants) regarding authorization of surgical procedures;

9122496

f)        exercised discretion to deny claims and in fact denied claims on behalf of the ERISA plans;

g)        issued remittance advices and EOBs;

h)        priced claims for the self-insured ERISA plans;

i)        communicated with ARS with respect to the processing of claims on behalf of the self-insured plans;

j)        processed appeals, and sent appeal response letters; and

k)        issued incorrect payments or caused the ERISA plans to issue incorrect payments to Plaintiffs.

21.     Accordingly, Aetna is a proper ERISA defendant because it "effectively controlled the decision whether to honor or to deny a claim..." *Cyr v. Reliance Life Ins. Co.,* 642 F.3d 1202, 1204 (9th Cir. 2011) (en banc), and because it "improperly den[ied] or cause[d] improper denial of benefits." *Spinedex Physical Therapy USA v. United Healthcare*, 770 F. 3d 1282, 1297 (9th Cir. 2014).

**C.     The Treatment Centers**

22.     The OTCs are healthcare organizations that own and operate outpatient treatment centers in the State of Arizona.  The OTCs are, and at all relevant times were, Arizona entities organized and existing under the laws of Arizona.  The OTCs are, and at all relevant times were, health care providers licensed and in good standing under the laws of Arizona.

23.     The OTCs are all duly licensed by the State of Arizona Department of Health Services as "Outpatient Treatment Centers," pursuant to 9 A.A.C. Article 10.

D.     **DOE Defendants**

24.     Plaintiffs do not know the true names or capacities, whether individual, corporate, associate, or otherwise, of defendant DOES 1 through 50, and therefore designate those defendants by such fictitious names.  Each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to and proximately caused the injuries suffered by Plaintiffs.  Plaintiffs will amend this

8

complaint to allege the true names and capacities of these DOES when the same becomes known to Plaintiffs.  DOES and Aetna are collectively referred to herein as "Defendants."

**IV.**

**ALLEGATIONS COMMON TO ALL CLAIMS**

25.     The OTCs provided medical treatment to each of the Patients on one or more occasions.  The medical treatment provided by the OTCs to the Patients did not involve surgeries, but rather was non-surgical treatments, such as pain medication injections.

26.     Before providing medical treatment to the Patients, the OTCs contacted Aetna to verify that the Patient was in fact covered by a plan administered by Aetna and to seek authorization to provide such treatment.  For each of the Patient claims at issue, Aetna, either on behalf of itself or the Other Payors, informed the OTCs that the Patient was covered, and either authorized the OTCs to provide medical services, or informed the OTCs that no authorization was necessary.

27.     For each of the Patient claims at issue, ARS billed Aetna for the services provided by the OTCs at the OTCs' customary billing rates.

28.     Notwithstanding Aetna's representation to the OTCs that they were authorized to provide medical treatment to the Patients or that such authorization was unnecessary, Aetna, either on behalf of itself or the Other Payors, denied payment on the bills submitted by ARS.  According to Aetna's explanation of benefits documents ("EOBs") submitted to ARS, Aetna's denials were based on its determination that the OTCs "did not meet provider requirements."  At no time before submitting these EOBs to ARS did Aetna inform ARS, the OTCs, or the Patients that Aetna would refuse to pay for the medical services provided by ARS on the grounds that the OTCs "did not meet provider requirements" or on any other grounds.

29.     Plaintiffs took all steps necessary under the Patients' respective insurance plans to appeal Aetna's denial of benefits.  Each of ARS' appeals were denied on the same grounds stated in Aetna's initial EOBs.

30.     ARS also repeatedly communicated with Aetna in order to clarify the

9

grounds on which Aetna was denying payment for services rendered by the OTCs to the Patients. These communications included phone calls, emails, and letters sent by ARS to Aetna in order to clarify the grounds for Aetna's repeated refusal to make the payments due and owing under the Patients' respective plans of insurance.

31. Aetna responded to ARS' repeated requests for clarification in an email dated April 17, 2018, which reiterated Aetna's denials and informed ARS that Aetna would not be making any payments on the Patient claims at issue. Aetna's April 17, 2018 email gave the following grounds for Aetna's payment denials:

> Upon receipt of your email, we immediately reached out to our Special Investigations Unit to have your concerns reviewed. We were advised that the claims submitted by the three facilities above are for surgical procedures, anesthesia, injections and surgical supplies for services that do not require inpatient care in a hospital as well as revenue codes for facility fees. These procedures and services would be rendered in an outpatient surgery center based upon the State of Arizona Administrative Code Title 9 Ch. 10 under #139. These services do not fit the description of an outpatient treatment center per the State of Arizona Administrative Code Title 9 Ch. 10 #140.
>
> The facilities above are licensed as Outpatient Treatment Centers and not an Outpatient Surgery Centers. The State of Arizona describes an outpatient treatment center as "a class of health care institution without inpatient beds that provides physical health services or behavioral health services for the diagnosis and treatment of patients." These types of services are not being billed by the three facilities above.

32. Aetna's April 17, 2018 email reveals that its repeated denials of payment for the services rendered by the OTCs were based on nothing more than a basic misunderstanding of Arizona law and the procedures provided by the OTCs and billed by ARS.

33. As alleged above, the medical services that the OTCs provided to the Patients were not surgery services, but rather were non-surgical services that the OTCs are licensed to provide.

34. Under Arizona law, "outpatient treatment center" means "a class of health care institution without inpatient beds that provides physical health services or behavioral health services for the diagnosis and treatment of patients." Ariz. Admin. Code R9-10-101 (149).

10

9122496

35.     Facilities like the OTCs—which are licensed as outpatient treatment centers—are authorized to provide "physical health services," which are defined to include "medical services, nursing services, health-related services, or ancillary services provided to an individual to address the individual's medical condition." Ariz. Admin. Code R9-10-101. The services provided by the OTCs to the Patients at issue are "medical services" under Arizona law and which the OTCs are licensed under Arizona law to provide.

36.     The statutory definition of "medical services," under which the administrative rule was adopted, is services that "pertain to medical care and that are performed at the direction of a physician on behalf of patients by physicians, dentists, nurses and other professional and technical personnel." A.R.S. § 36–401(A)(30). "Treatment" under the rule is defined as a "procedure or method to cure, improve, or palliate an individual's medical condition or behavioral health issue." Ariz. Admin. Code R9-10-101.

37.     There is no provision of Arizona law limiting the definition of "medical services" that outpatient treatment centers, including the Plaintiffs here, may be licensed to provide. Moreover, before receiving a license from the Arizona Department of Health Services to operate an outpatient treatment center, each of the OTCs provided to the Department their proposed scope of services, which encompassed all of the services provided to the Patients at issue. Before issuing the licenses, the Department was legally required to, and on information and belief, did review the OTCs' scope of services to determine whether the requested license was appropriate.

38.     Arizona law is clear that Aetna's grounds for denying payment for the services rendered by the OTCs is mistaken. Arizona law permits outpatient treatment centers like the OTCs here to provide all the services provided to the Patients at issue, and the Arizona Department of Health Services in fact licensed the OTCs to provide such services. In fact, Aetna itself has paid for such services when rendered by the OTCs in the past. Neither Arizona law, nor the status of the OTCs' licenses granted by the Arizona Department of Health has changed in any relevant way between the time during which

11

9122496

Aetna paid for the same treatments it has denied here.  Moreover, no other health insurer has contended that the OTCs are not licensed to provide the same treatments at issue here to their members.

39.    Moreover, on many occasions over a number of years, Aetna has paid the OTCs for the very same services that are issue in this case, and did not deny the claims on the grounds that the Outpatient Treatment Centers "did not meet provider requirements." Furthermore, other insurers and payors, both on behalf of themselves for fully insured members and on behalf of self-funded ERISA plans, have paid the Outpatient Treatment Centers for the very same services that are issue in this case, and did not deny the claims on the grounds that the Outpatient Treatment Centers "did not meet provider requirements."

**V.**

**ERISA CLAIMS**

40.    People who receive their health insurance through a private employment-based benefit plan are typically participants or beneficiaries of plans governed by the ERISA, 29 U.S.C. § 1001 et seq.  Sometimes the ERISA plans are fully insured by health insurers such as Aetna.  Sometimes the plan is self-funded, in which case the plan is financially responsible for the claims arising from that plan.

41.    Plaintiffs are informed and believe that Aetna is the ERISA plan administrator and ERISA fiduciary for the ERISA claims at issue in this Complaint, or is otherwise a proper ERISA defendant because it "effectively controlled the decision whether to honor or to deny a claim ..." *Cyr*, *supra*, 642 F.3d at 1204, and because it "improperly den[ied] or cause[d] improper denial of benefits."  *Spinedex*, *supra*, 770 F.3d at 1297.

42.    Upon information and belief, with respect to the self-insured ERISA plans at issue herein, the Other Payors enter into agreements with Aetna to perform administrative and other key responsibilities such as (a) certifying or authorizing providers' provision of services to members; (b) receiving providers' claims; (c) pricing the claims; (d) processing

and administering the claims and appeals; (e) approving or denying the claims; (f) directing whether and how to pay the claims; (g) issuing remittance advices and explanations of benefits; (h) communicating with providers regarding the claims and services; (i) communicating with members regarding the claims and services; and (j) in many instances issuing payment.  On information and belief, these agreements are structured such that Aetna has a financial incentive to keep benefit costs to the funding entity low.

43.     On information and belief, Aetna functions as an ERISA plan administrator with respect to those claims upon which they have exercised delegated authority to provide plan documents to participants and beneficiaries, receive benefit claims, evaluate and process those claims, review the terms of the plan, make initial benefit determinations, make and administer benefit payments, handle appeals of benefit determinations, and serve as the primary point of contact for members and providers to communicate regarding benefits and benefit determinations.  In carrying out these ERISA plan administrator functions, Aetna possesses authority and fiduciary discretion to manage and administer the Other Payors' ERISA plans.

44.     Upon information and belief, no provisions in Aetna's or the Other Payors' benefit plans, whether in their Summary Plan Descriptions or Evidences of Coverage, justified the failure to pay for the medical services provided by the OTCs to the Patients.

45.     The formal mechanism for a health plan or plan administrator to explain why a claim is denied (meaning that the allowed amount is anything less than full billed charges) is an explanation of benefits ("EOB").  Aetna was required to issue EOBs in conformance with 29 U.S.C. § 1133 as implemented by 29 C.F.R. 2560.503-1.  Specifically, under 29 C.F.R. § 2560.503-1(g), Aetna was required to:

> . . . provide a claimant with written or electronic notification of any adverse benefit determination.  Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv).  The notification shall set forth, in a manner calculated to be understood by the claimant –
>
> (i)     The specific reason or reasons for the adverse determination;

(ii)    Reference to the specific plan provisions on which the determination is based;

(iii)   A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv)    A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v)     In the case of an adverse benefit determination by a group health plan or a plan providing disability benefits,

(A)     If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or

(B)     If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

46.     When each of the relevant claims was denied, Aetna gave the same reason that failed to adequately explain the basis for its decision in a manner calculated to be understood.  Aetna's EOBs did not comply with the ERISA regulations, including not stating the specific and/or actual reasons for its failure to pay claims, providing any of the details required by the law (including the specific plan provisions purportedly justifying its failure to pay), or requesting more information if needed as required by law.

47.     The same is true for appeals.  While Aetna's failure to comply with the ERISA regulations when issuing EOBs means that the OTCs and/or ARS had no duty to appeal, the OTCs and ARS did in some cases file appeals to which Aetna's responses were equally deficient.  Appeal response letters are subject to parallel requirements as EOBs.  29 C.F.R. § 2560.503-1(j).  *See Ellis v. Met. Life Ins. Co.*, 126 F.3d 228, 237 (4th Cir. 1997) ("The notice requirement for the decision on review must be every bit as explicit as an

14

1    initial denial notice in terms of providing specific reasons for the continued denial and

2    specific references to the pertinent plan provisions.").  Yet, Aetna's appeal denial letters

3    were just as vague—and in many cases, nonsensical—as were its EOBs.

4        48.    As is standard in the healthcare industry, as a condition of their treatment by

5    the OTCs, each of the Patients assigned their rights to benefits under their respective

6    insurance plans to ARS.  Concurrently with this assignment of benefits, each of the Patients

7    also appointed ARS as their authorized representative to act on their behalf to seek the

8    benefits due under their insurance plans as reimbursement for the medical services

9    provided by the OTCs.  Each of the Patients also granted ARS a specific power of attorney

10   empowering ARS to do everything necessary, including bringing suit in their names, to

11   receive the benefits due and owing to them under their respective plans of insurance as

12   reimbursement for the services provided by the OTCs.  The Patients' appointment of ARS

13   as authorized representative, their assignment of ERISA benefits to ARS, and their grant

14   of the specific power of attorney to ARS are each valid and effective under Arizona law to

15   allow ARS to bring suit on behalf of the Patients under ERISA.

16       49.    Aetna did not deny claims on the basis that ARS had obtained an inadequate

17   assignment of benefits, or that ARS was not otherwise a valid assignee of benefits with

18   respect to the Patient claims at issue here.

19       50.    To the extent there are any underpayments that were not fully appealed, in

20   light of Aetna's grievous breach of its obligations (including, but not limited to, Aetna's

21   insufficient EOBs and appeal responses), and systematic failures, the ERISA regulations

22   provide that the claimants "shall be deemed to have exhausted the administrative remedies

23   under the plan ..."  29 C.F.R. § 2560.503-1(l).  Similarly, for the same reason, any appeals

24   by the OTCs would have been futile

25       51.    In light of Aetna's breaches, a de novo standard of review should be applied

26   here.  But even if some deference were accorded to Aetna's decision not to pay the claims

27   at issue, that decision is clearly erroneous, arbitrary and capricious.

28   . . .

1
2
3
4

**COUNT ONE**

**(Enforcement Under 29 U.S.C. § 1132(a)(1)(B)**

**For Failure to Pay ERISA Plan Benefits)**

(All Plaintiffs Against Aetna and DOES 1 Through 50)

5
6
7
8
9

52.     Plaintiffs incorporate all allegations set forth in the above paragraphs as though fully set forth herein.  This Count is brought by all the Plaintiffs.  The Patient Plaintiffs bring this Count in their own right, and ARS bring this Count as the Authorized Representative and as the attorney-in-fact for the Patients pursuant to the Specific Power of Attorney.

10
11
12
13

53.     The OTCs allege this claim for relief in connection with claims for treatment rendered to patients covered by self-funded health benefits plans governed by ERISA.  This is a claim to recover benefits, enforce rights and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B).

14
15
16

54.     Plaintiffs are informed and believe that the ERISA plans at issue in this case required Aetna and the ERISA plans to pay for the medical services that the OTCs provided to the Patients.

17
18
19

55.     Aetna has breached these ERISA plan provisions and has failed to provide the ERISA plan members the benefits due to them under the terms of their plans by denying payment to ARS for the services rendered to the Patients.

20
21
22

56.     As a result of Aetna's nonpayment of benefits, it is liable to Plaintiffs for the difference between what should have been paid and the amounts that were actually paid, plus applicable interest and attorneys' fees.

23
24
25

**COUNT TWO**

**(Breach of Contract)**

(By Patients and ARS Against Aetna and DOES 1 Through 50)

26
27
28

57.     Plaintiffs incorporate all allegations set forth in the above paragraphs as though fully set forth herein.  This Count is brought by the Patients in their own names and by ARS as the Patients' attorney-in-fact based on the Specific Power of Attorney.

16

9122496

58.     This Count applies to claims governed by state law, and not any of the ERISA claims.

59.     Each of the Patients is party to a health insurance contract providing that Aetna would pay for authorized and medically necessary services rendered by a licensed healthcare professional.

60.     The Patients sought and received medically necessary services from the OTCs, and the OTCs and/or ARS sought authorization from Aetna for such treatment.  The OTCs and/or ARS either received authorization from Aetna to provide the treatment, or were informed that authorization was not necessary for such treatment.

61.     Plaintiffs fully performed all of their obligations under the health insurance contracts, or, to the extent they failed to perform any such obligation, such failure is excused by Defendants' failure to perform.

62.     In breach of its obligations under the health insurance contracts, Aetna failed and refused to pay for the services rendered by the OTCs to the Patients.

63.     Aetna's breach of the Patients' respective insurance contracts caused damages to Plaintiffs in an amount to be determined at trial.

## COUNT THREE

### (For Unjust Enrichment)

(By Patients and ARS Against Aetna and DOES 1 Through 50)

64.     Plaintiffs incorporate all allegations set forth in the above paragraphs as though fully set forth herein.  This Count is brought by the Patients in their own name and by ARS as the Patients' attorney-in-fact based on the Specific Power of Attorney.

65.     This Count applies to claims governed by state law as an alternative to Plaintiffs' other causes of action, and does not apply to ERISA claims.

66.     Aetna was enriched by failing and refusing the amounts due and owing to Plaintiffs under Aetna's health insurance contracts with the Patients.

67.     Conversely, the OTCs were impoverished by providing valuable treatment to Aetna's members and insureds with the expectation of payment, only to be denied such

17

1  payment by Aetna.

2      68.     There is no justification for Aetna's refusal to pay for the medical treatment

3  provided to its members and insureds.  The only justification provided by Aetna is based

4  on a mistaken understanding of Arizona law relating to the Treatment Center's licensure.

5      69.     Should Plaintiffs' other causes of action fail for any reason, Plaintiffs will

6  not have been afforded an adequate remedy under law for Aetna's unjust enrichment and

7  Plaintiffs' resulting impoverishment.

8      **WHEREFORE**, Plaintiffs pray for judgment against Aetna and DOES 1 through

9  50 as follows:

10     1.     For compensatory damages in an amount to be proved at trial, plus applicable

11 interest;

12     2.     For restitution from Aetna and DOES 1 through 50 in an amount to be proved

13 at trial, plus applicable interest;

14     3.     For an award of costs and reasonable attorneys' fees pursuant to ARS §§ 12-

15 341, 12-341.01(A).

16     4.     For punitive damages from Aetna and DOES 1 through 50; and

17     5.     For such other relief as the Court deems just and appropriate.

18

19     DATED this 11th day of October, 2019.

20                                      **THORPE SHWER, P.C.**

21

22                              By: */s/ Sara R. Witthoft_____*
                                      Sara R. Witthoft
                                      Matthew T. St. Martin

23

24                                      AND

25                                      Daron Tooch (*pro hac vice* pending)
                                      **KING & SPALDING, LLP**

26                                      *Attorneys for Plaintiffs Advanced*
                                      *Reimbursement Solutions, LLC, and*

27                                      *Patients 1-513.*

28

9122496