Keith Beauchamp (012434)
Shelley Tolman (030945)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5490
kbeauchamp@cblawyers.com
stolman@cblawyers.com

Jeffrey S. Gleason (admitted *pro hac vice*)
Jamie R. Kurtz (admitted *pro hac vice*)
Nathaniel J. Moore (admitted *pro hac vice*)
Eric B. Boettcher (admitted *pro hac vice*)
**ROBINS KAPLAN LLP**
2800 LaSalle Ave, Suite 2800
Minneapolis, MN 55402
T: (612) 349-8500
jgleason@robinskaplan.com
jkurtz@robinskaplan.com
nmoore@robinskaplan.com
eboettcher@robinskaplan.com

*Attorneys for Defendants/Counterclaimants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Advanced Reimbursement Solutions, LLC; and Patients 1-513,<br><br>         Plaintiffs,<br><br>v.<br><br>The Aetna Life Insurance Company; Aetna Inc.; Aetna Health Inc.; and Does 1-50,<br><br>         Defendants. | No. CV-19-05395-PHX-DLR<br><br>**DEFENDANTS THE AETNA LIFE INSURANCE COMPANY, AETNA INC., AND AETNA HEALTH INC.'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND FOR DISMISSAL OF PLAINTIFFS' CLAIMS FOR LACK OF SUBJECT-MATTER JURISDICTION**<br><br>**ORAL ARGUMENT REQUESTED** |
| The Aetna Life Insurance Company; and Aetna Inc.,<br><br>         Counterclaimants,<br><br>v.<br><br>Advanced Reimbursement Solutions, LLC, et al.,<br><br>         Counterdefendants. | |

{00495343.1 }

Pursuant to Fed. R. Civ. P. 12(c) and 12(h)(3), Defendants The Aetna Life Insurance Company, Aetna, Inc., and Aetna Health Inc. (collectively, "Aetna") move for dismissal of the three claims asserted by Plaintiffs Advanced Reimbursement Solutions, LLC ("ARS") and Patients 1-513[1] (the "Patient Plaintiffs"). The claims asserted by ARS in its own name must be dismissed because ARS has not alleged that it suffered an injury in fact. ARS lacks the legal authority to assert claims on behalf of the Patient Plaintiffs because: (1) the Patient Plaintiffs assigned their benefits to the Outpatient Treatment Centers ("OTCs"), not ARS, and the assignments would be invalid as a matter of law even if they were executed in favor of ARS; and (2) the powers of attorney executed by the Patient Plaintiffs are invalid because they do not comply with Arizona law, and in any event do not convey to ARS the right to assert claims on behalf of, or in the names of, the Patient Plaintiffs.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

ARS and the 513 anonymously-pleaded Patient Plaintiffs each assert three claims against Aetna. For its part, ARS does not allege that it suffered an injury in fact. Instead, ARS filed the case purportedly "on behalf of patients who receive their health insurance from" Aetna. (Dkt. 1, ¶ 1.) The Patient Plaintiffs are not involved in this litigation. Instead, ARS is prosecuting these claims "in the names of" the Patient Plaintiffs. (*See* Dkt. 1, ¶ 12 & 48.) But ARS lacks legal authority to assert claims against Aetna on behalf of, or in the names of, the Patient Plaintiffs.

ARS claims authority from two sources to assert claims on behalf of, and in the names of, the Patient Plaintiffs: (1) assignments of benefits and (2) powers of attorney

---

[1] The Complaint does not identify the Patient Plaintiffs by name, instead inappropriately using pseudonyms. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-69 (9th Cir. 2000) (Ninth Circuit permits pseudonyms "in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity."); *Doe v. UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d 1140, 1142 (N.D. Cal. 2016) (ERISA cases often involve sensitive medical information, but, "[a]s a rule, these cases do not proceed anonymously.").

executed by the Patient Plaintiffs.[2] (*See* Dkt. 1, ¶¶ 12 & 48.) But each of these documentary sources of authority are deficient for at least two reasons.

The assignments of benefits were made by the Patient Plaintiffs *to the OTCs*, not to ARS. (*See id.*, Ex. A ("I hereby irrevocably assign *to Provider* all my rights") (emphasis added).) This is not in dispute; ARS alleges it in the Complaint. (*See id.* ¶ 13 (exemplary assignment "that all the Patients provided to the OTCs is attached hereto as Exhibit A"); *see also* Dkt. 23-1, Ex. 4 (letter from ARS to Patient Plaintiffs stating that "when you received your medical services at the Provider, you signed an Assignment of Benefits form in which you assigned your insurance benefits to the Provider so that the Provider could obtain payment for the services provided to you").) Moreover, even if the assignments were made to ARS (which they were not), ARS would lack standing under controlling Ninth Circuit precedent, because only health care *providers* may obtain derivative standing under 29 U.S.C. § 1132(a) by an assignment from a beneficiary.

The powers of attorney relied upon by ARS are invalid because they do not comply with the controlling Arizona statue, which requires that powers of attorney be notarized, that a witness provide a notarized affidavit, and that it "substantially" follow the form set forth in A.R.S. § 14-5501. *See* A.R.S. § 14-5501(D). The powers of attorney purportedly signed by the Patient Plaintiffs do not meet any of these statutory requirements, much less all three of them. Even if they were valid under the statute (which they are not), the powers of attorney convey only five specific and enumerated powers to ARS, *none of which includes the right to assert legal claims on their behalf*. (*See* Dkt. 1, Ex. B.)

---

[2] In the Complaint, ARS also asserted that it had standing to assert claims on behalf of the Patient Plaintiffs as their "authorized representative." (Dkt. 1, ¶ 12.) In a recent filing, ARS conceded that its status as an authorized representative *does not* convey it standing to assert claims against Aetna. (*See* Dkt. 95 at 9-10.) Nevertheless, because ARS alleged that its status as an authorized representative afforded it standing to sue "in the names of the Patient [Plaintiffs]" (Dkt. 1, ¶ 12), Aetna addresses the allegation briefly herein.

Because ARS has not alleged an injury in fact and lacks the legal authority to assert claims in the names of the Patient Plaintiffs, the claims should be dismissed under Rules 12(c) and (h).

## II. BACKGROUND

### a. The Plaintiffs' allegations in the Complaint.

The Patient Plaintiffs are Aetna members who purportedly received treatment at certain non-plaintiff Outpatient Treatment Centers ("OTCs") in Arizona. (Dkt. 1, ¶ 11.) The OTCs contracted with ARS to bill Aetna and other insurance plans for services rendered by the OTCs and to "bring legal proceedings in order to collect any sums owed to the OTCs by health insurance plans[.]" (*Id*. ¶ 10.) According to the Complaint, Aetna did not pay the OTCs for all of the services billed to it by the OTCs and ARS. (*Id*. ¶ 5.)

### b. ARS asserts claims directly against Aetna, but does not allege an injury.

ARS asserts three claims of its own against Aetna. (*See id*. at 16 (Count I brought by "All Plaintiffs"); *id*. (Count II brought by "Patients and ARS"); *id*. at 17 (Count III brought by "Patients and ARS").) ARS does not, however, allege that it suffered an injury in fact caused by Aetna. (*See generally id*.)

### c. The Patient Plaintiffs execute assignments to the OTCs, not to ARS.

The Patient Plaintiffs executed assignments of benefits in favor of the OTCs. (Dkt. 1, ¶ 13 & Ex. A.) The operative language in the assignment is as follows: "1. **Legal Assignment of Insurance Benefits**: In exchange for and in connection with any and all of the service(s) provided to me ("Services") by Provider, I hereby irrevocably assign *to Provider* all of my rights, benefits, privileges, protections, claims and any other interests of any kind whatsoever, without limitation[.]" (Dkt. 1, Ex. A (italics added; bold original).) The assignment executed by the Patient Plaintiffs to the OTCs included, among other things, the Patient Plaintiffs' "rights to sue," and confirmed that the Patient Plaintiffs "transferr[ed] all and retain[] none of these Rights" after assignment to the OTCs. (*Id*.)

After purporting to assign all of the Patient Plaintiffs' rights to the OTCs, the assignments of benefits include a section entitled "Appointment of Authorized

{00495343.1 }                                            4

Representative and Right to Sue." (*Id.*) That section states that ARS was "granted absolute power and legal authority to do, seek, claim, appeal or obtain anything that [the Patient Plaintiffs] would have been entitled to do, seek, claim, appeal, or obtain in my own capacity[.]"(*Id.*) However, there is no language assigning any of the Patient Plaintiffs' rights to ARS. (*Id.*) Moreover, having already "transferr[ed] all and retain[ed] none of" their rights through the assignment to the OTCs, the Patient Plaintiffs had no such rights to grant ARS.

### d. The powers of attorney do not comply with Arizona law and do not convey the right to sue in the Patient Plaintiffs' names.

Each of the Patient Plaintiffs also executed a document entitled "Authorization of Representation and Specific Power of Attorney." (*Id.*, ¶¶ 14-15 & Ex. B.) The document has two sections, one entitled "Authorization of Representation," and another entitled "Specific Power of Attorney." (*Id*, Ex. B.) Through the powers of attorney, the Patient Plaintiffs conveyed five enumerated powers to ARS:

This SPECIFIC POWER OF ATTORNEY grants the following:

- Ability for ARS, or its agents or representatives to sign, endorse, and complete on my behalf any settlement agreements releases, checks, and/or other documents necessary to properly and completely execute any Authorization of Representation and/or Protected Health Information (PHI) forms and any and all corresponding claims.
- To claim on my behalf any benefits, reimbursements, damages, excise taxes and awards
- Directly communicate with the Plan Administrator of my employer
- Direct the Third-Party Administrator to mail checks directly to ARS for processing
- To edit, complete, and/or fill out any Insurance carrier forms to adjudicate the claim, appeal the claim, or interact with my employer or Insurance carrier

(*Id.*) None of the enumerated powers authorized ARS to assert legal claims on behalf or, or in the names of, the Patient Plaintiffs. (*Id.*)

The powers of attorney were not notarized, were not accompanied by a notarized witness affidavit, and did not substantially follow the form set forth in A.R.S. § 14-5501(D). (*See id.*, Ex. B; *see also* Dkt. 62-4, Ex. A (executed power of attorney); Dkt. 62-5, Ex. A (same); Dkt. 62-6, Ex. A (same).)

e. **ARS asserts claims against Aetna in the names of the Patient Plaintiffs.**

None of the 513 Patient Plaintiffs have asserted claims against Aetna on their own behalf. Instead, ARS asserted claims "in the names of" each of the Patient Plaintiffs, based on the powers of attorney they allegedly signed. (Dkt. 1 at ¶¶ 12-16, 52, 57, 64 & Ex. B.)

f. **ARS informs the Patient Plaintiffs it will sue Aetna in their names unless they opt out of the litigation.**

In or around September 2019, ARS sent a letter to the Aetna insureds who had been treated by the OTCs, including the 513 Patient Plaintiffs. (*See, e.g.*, Dkt. 23-1, Ex. 4.) In that letter, ARS confirmed that it would be asserting claims against Aetna in the names of the insureds and that, *unless the particular insured opted out*, he or she would be part of the lawsuit. (*Id.*) For the insureds that did not opt out of the litigation, the letter promised that "ARS and the [OTCs] will only seek payment for the medical services provided to you from Aetna or plan, *and not from you*." (*Id.* (emphasis added).) Therefore, to be clear, the 513 Patient Plaintiffs on whose behalf ARS purports to bring this action have no payment obligations to the OTCs and will be unaffected by the outcome of this suit.

III. **LEGAL STANDARD**

A motion for judgment on the pleadings under Rule 12(c) "is properly granted when, 'taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)). The Court "construes the pleadings in the light most favorable to the nonmoving party," but although "factual allegations are taken as true, [the Court does] not assume the truth of legal

conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quotation marks omitted). "If, on a motion for judgment on the pleadings, a party raises an issue as to the court's subject matter jurisdiction, 'the district judge will treat the motion as if . . . brought under Rule 12(b)(1).'" *Kennard v. Lamb Weston Holdings, Inc.*, No. 18-cv-04665-YGR, 2019 WL 4278940, at *2 (N.D. Cal. Sept. 10, 2019) (quoting *San Luis Unit Food Producers v. United States*, 772 F. Supp. 2d 1210, 1218 (E.D. Cal. 2011), *aff'd*, 709 F.3d 798 (9th Cir. 2013)). To prevail, a plaintiff "must allege and show that they have personally been injured." *Kennard*, 2019 WL 4278940, at *2 (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

A motion for lack of subject-matter jurisdiction under Rule 12(h)(3) is also treated as if brought under Fed. R. Civ. P. 12(b)(1). *See Hamidi v. Serv. Emps. Int'l Union Local 1000*, 386 F. Supp. 3d 1289, 1294 (E.D. Cal. 2019) ("The difference between a Rule 12(h)(3) motion and a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party.") (quotation marks omitted); *see also Augustine v. United States*, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983) ("The matter of subject matter jurisdiction, however, may be raised by the parties at any time pursuant to Fed. R. Civ. P. 12(h)(3)[.]").

## IV.  THE ASSIGNMENTS OF BENEFITS DO NOT AFFORD ARS STANDING.

### a.  The assignments of benefits were made in favor of the OTCs, not ARS.

ARS alleges that the Patient Plaintiffs' assignments of benefits "allow ARS to bring suit on behalf of the Patient [Plaintiffs] under ERISA." (Dkt. 1, ¶ 48.) But, as ARS alleges and the exhibits to the Complaint confirm, the assignments executed by the Patient Plaintiffs were to the OTCs, not to ARS. (*See id.* ¶ 13 (exemplary assignment "that all the Patients provided *to the OTCs* is attached hereto as Exhibit A.") (emphasis added), Ex. A ("I hereby irrevocably assign *to Provider* all my rights") (emphasis added); Dkt. 23-1, Ex. 4 (letter from ARS to Patient Plaintiffs stating that "when you received your medical services at the Provider, you signed an Assignment of Benefits form in which you assigned your insurance benefits to the Provider so that the Provider could obtain payment for the services provided

to you").) Therefore, even assuming the assignments were valid,[3] the OTCs would be the real parties in interest. *See Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1281 (9th Cir. 1983) (party "possessing the substantive right at issue" is the real party in interest); *St. Peter's Hosp. v. Lexington Ins. Co.*, No. CV 16-91-H-SEH, 2018 WL 2470732, at *1-2 (D. Mont. June 1, 2018) ("It is the settled law of . . . the Ninth Circuit . . . that complete assignment of a claim divests the assignor of any remaining interest in the matter assigned."); *Stapleton v. City of Victorville*, No 17-cv-2469-PSG (PLAx), 2018 WL 6262830, at *3 (C.D. Cal. June 7, 2018) (collecting cases for proposition that assignee is real party in interest).

There is no language in the assignments of benefits assigning anything to ARS. (*See* Dkt. 1, Ex. A.) This is critical, because whether an assignee has standing to sue depends on whether the claims are within the scope of the assignments. *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 876-77 (9th Cir. 2017). Here, the assignments *to the OTCs* state that the Patient Plaintiffs are "transferring all and retaining none of these Rights." (*See* Dkt. 1, Ex. A.) The rights that the Patient Plaintiffs sought to transfer to the OTCs included their "rights to sue." (*Id*.) Therefore, assuming the assignments of benefits were valid, the right to sue was assigned by the Patient Plaintiffs *to the OTCs*, and could not then be assigned by the Patient Plaintiffs to ARS.[4] *See Spinedex Physical Therapy USA*

---

[3]  The impacted health plans' non-assignment provisions invalidate any assignment of benefits by the Patient Plaintiffs under controlling Ninth Circuit precedent. *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991) ("ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan."); *Brand Tarzana Surgical Inst. v. Int'l Longshore & Warehouse Union-Pacific Mar. Ass'n Welfare Plan*, 706 F. App'x. 442, 443 (9th Cir. 2017) (affirming summary judgment against healthcare provider because "an assignment is not valid where prohibited by unambiguous plan language like an anti-assignment provision.").

[4]  ARS relies on language later in the assignments of benefits that ARS was "granted absolute power and legal authority to do, seek, claim, appeal, or obtain anything that [the Patient Plaintiffs] would have been entitled to do, seek, claim, appeal, or obtain [their] own capacity[.]" (*Id*.) This is not an assignment. Moreover, this provision explicitly recognizes that, where the Patient Plaintiffs no longer had certain rights (*e.g.*, if they were already assigned to the OTCs) the Patient Plaintiffs could not convey them to ARS. Further, to the extent this language could be construed as an authorization for ARS to represent the Patient

*Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1293 (9th Cir. 2014) (where beneficiaries assign their right to seek payment to their health care provider, beneficiaries give up their claim).

      **b.**    **Even if the Patient Plaintiffs had assigned their benefits to ARS, ARS would not have standing under 29 U.S.C. § 1132(a)(1)(B).**

The only parties who have direct standing to assert a claim under 29 U.S.C. § 1132(a)(1)(B) are participants and beneficiaries in a plan. 29 U.S.C. § 1132(a)(1)(B). However, the Ninth Circuit created a judicial exception to this rule, allowing "derivative standing for health care providers to whom beneficiaries had assigned their benefit claims after receiving medical care from such providers." *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1080-81 (9th Cir. 2000) (citing *Misic v. Bldg. Serv. Emp. Health & Welfare Trust*, 789 F.2d 1374 (9th Cir. 1986) (per curiam)). ARS cannot satisfy any of the three prongs of this judicial exception. First, ARS is not a health care provider, it is a provider of "billing and other back-office services to healthcare providers." (Dkt. 1, ¶ 10.) Second, ARS did not provide medical care to the Patient Plaintiffs, the OTCs did. (*Id*. ¶ 2.) Third, the Patient Plaintiffs did not assign their benefits to ARS. (*Id*., ¶ 13 & Ex. A.)

The Ninth Circuit has refused to expand its judicial exception beyond the health care providers that rendered care to the assignors. *Simon*, 208 F.3d at 1080-81 (allowing assignment of benefits beyond the rendering health care provider "would be tantamount to transforming health benefit claims into a freely tradable commodity"); *see also Angel Jet Servs., LLC v. Giant Eagle, Inc.*, No. CV 09-01489-PHX-MHM, 2010 WL 1266831, at *4 (D. Ariz. March 29, 2010) ("The Ninth Circuit has held that an ERISA beneficiary may confer standing on its assignee when such assignments are not prohibited by the plan and are not conferred upon non-health providers."); *Dual Diagnosis Treatment Ctr. v. Blue Cross of Cal.*, No. SA CV 15-0736-DOC (DFMx), 2017 WL 11467730, at *3-4 (C.D. Cal. Sept. 25, 2017) (dismissing claims on motion to dismiss because allegations insufficient to

---

Plaintiffs, this purported authorization would be invalid because it does not comply with the power of attorney execution requirements set forth in A.R.S. § 14-5501(D).

demonstrate assignee received assignments in exchange for the provision of health care services); *Bristol SL Holdings, Inc. v. United HealthCare Servs.*, No. SA CV 19-0710-DOC (DFMx), 2019 WL 6333803, at *3-4 (C.D. Cal. Oct. 7, 2019) (company that acquired claims from health care provider could not rely on assignments because it was not the health care provider). Because ARS lacks direct standing to assert a claim under 29 U.S.C. § 1132(a)(1)(B), and lacks derivative standing under *Misic* and its progeny, its claims must be dismissed.

V.  **THE POWERS OF ATTORNEY DO NOT GIVE ARS THE LEGAL RIGHT TO ASSERT CLAIMS IN THE NAMES OF THE PATIENT PLAINTIFFS.**

ARS has taken the extraordinary step of asserting claims in the names of the Patient Plaintiffs. ARS justifies this decision by citing to the powers of attorney executed by the Patient Plaintiffs. (*See* Dkt. 1, ¶¶ 12-16, 52, 57, 64 & Ex B; *see also* Dkt. 23-1, Ex. 4 (letter from ARS to Patient Plaintiffs informing them that ARS would assert claim on their behalf unless they opted out of the litigation); Moore Decl., Ex. 1 (March 25, 2020 letter stating that the Patient Plaintiffs "are represented in this action by and through their attorney-in-fact," ARS).) But the powers of attorney are invalid because they fail to comply with Arizona law, and even if valid, do not convey to ARS the right to assert claims on behalf of, or in the names of, the Patient Plaintiffs. The claims should be dismissed.

    a.    **The powers of attorney are invalid; they do not comply with Arizona law.**

To be valid under Arizona law, a power of attorney must include, among other things: (1) an affidavit of a witness, which must be notarized; (2) a notarization, stamped with the notary's seal, of the execution of the power of attorney; and (3) the power of attorney must "substantially" follow the template set forth in A.R.S. § 14-5501(D)(4), which includes a certification by the witness in their affidavit that the principal signs and executes the power of attorney willingly, under no constraint or undue influence, and while of sound mind. A.R.S. § 14-5501(D). The powers of attorney attached as Exhibit B to the

Complaint do not comply with any of these requirements.[5] (*See* Dkt. 1, Ex. B.) Therefore, they are invalid. *See Soza v. El Jardin Florists, Inc.*, 2009 WL 4981538, at *11-13 (Ariz. Ct. App. Dec. 22, 2009) (power of attorney that did not comply with A.R.S. § 14-5501(D) was invalid).

ARS does not argue that the powers of attorney comply with A.R.S. § 14-5501(D), because they plainly do not. (*See* Dkt. 95 at 11; Moore Decl., Ex. A.) Instead, ARS contends that the powers of attorney executed by the Patient Plaintiffs are "powers coupled with an interest" under A.R.S. § 5501(E), which exempt them from the execution requirements set forth in A.R.S. § 14-5501(D). (*See* Dkt. 95 at 11; Moore Decl. Ex. A.) ARS is wrong, but it has no choice but to follow this argument because it is the only way it can avoid the execution formalities imposed by Arizona law.

A power coupled with an interest means "a power that forms part of a contract and is security for money or the performance of a valuable act." A.R.S. § 14-5501(E). On the other hand, a general power of attorney is "a written instrument by which a principal designates another person as the principal's agent." *Weinstein v. Weinstein*, 326 P.3d 307, 317 (Ariz. 2014) (quotation marks omitted). The latter is precisely the nature of the powers of attorney entered into between the Patient Plaintiffs and ARS, as they enumerate five powers that ARS would perform as the Patient Plaintiffs' agent. (*See* Dkt. 1, Ex. B.)

A power of attorney coupled with an interest "is not merely an interest in the exercise of the power, but an interest *in the property over which the power operates*." *Weinstein*, 326 P.3d at 317 (emphasis added). Again, ARS has not alleged—and cannot allege—any interest in a property over which the powers of attorney operate. (*See* Dkt. 1.) Instead, the powers of attorney executed by the Patient Plaintiffs identify specific acts that ARS would

---

[5] ARS filed three executed powers of attorney in support of its Motion to Dismiss Aetna's Counterclaims that confirm that the powers of attorney: (1) do not contain a notarized affidavit from a witness; (2) were not notarized when executed; and (3) do not substantially follow the template set forth in A.R.S. § 14-5501(D)(4), including the certification by the witness that the principal signed willingly, under no undue influence, and while of sound mind. (*See* Dkt. 62-4 at 7-9; Dkt. 62-5 at 7-9; Dkt. 62-6 at 7-9.)

undertake as the Patient Plaintiffs' agent. (Dkt. 1, Ex. B (*e.g.*, "Directly communicate with the Plan Administrator of my employer.").) Put differently, a power given as security "is given to protect a legal or equitable title or to secure the performance of a duty apart from any duties owed the holder of the power by its creator that are incident to a relationship of agency."[6] Restatement (Third) of Agency § 3:12. "To have a power coupled with an interest, it is necessary that the interest . . . be in the subject matter of the power, and not in the proceeds which will arise from the exercise of the power." *Crawford v. Williams*, No. 1 CA-CV 07-0894, 2008 WL 5066207, at *5 (Ariz. Ct. App. Nov. 28, 2008) (quotation marks omitted). The powers of attorney at issue were not powers coupled with an interest.

ARS has argued that the powers of attorney were "powers coupled with an interest" because the Patient Plaintiffs "executed the Powers of Attorney as part of a larger contract pursuant to which ARS and the OTCs provided medical care to them and in return ARS and the OTCs obtained the Patients' interest in pursuing ERISA claims and other relief." (Dkt. 95 at 11.) This argument lacks a basis in fact and law.

As an initial matter, ARS cannot in good faith assert that it *provided medical care* to the Patient Plaintiffs. ARS is not a health care provider, and has not alleged that it is. (*See* Dkt. 1, ¶ 10.) The powers of attorney also do not convey to ARS "the Patients' interest in pursuing ERISA claims and other relief." (Dkt. 95 at 11.) At most, they authorize ARS to take certain actions to obtain benefits *on behalf of* the Patient Plaintiffs (Dkt. 1, Ex. B), even ignoring for the moment that the Patient Plaintiffs purported to assign the right to those benefits to the OTCs. Moreover, the only possible interest that ARS may have is in "the proceeds which will arise from the exercise of the power," which means it is not a power coupled with an interest. *See Crawford*, 2008 WL 5066207, at *5.

Lastly, "[a] power coupled with an interest survives the person giving it and is irrevocable." *Weinstein*, 326 P.3d at 317 (citing *Phx. Title & Trust Co. v. Grimes*, 416 P.2d

---

[6] A classic example of a power coupled with an interest serving as "security" is "when an agent has made advances to the principal and has the power to dispose of the principal's property to obtain reimbursement." 12 *Williston on Contracts* § 35:33 (4th ed. 2019).

979, 981 (Ariz. 1966)). The powers of attorney relied upon by ARS were only effective "until claims relating to the Services/Products are paid in their entirety or for two years whichever comes first." (Dkt. 1, Ex. B.) Because they would be revoked at the earlier of two occurrences, the powers of attorney relied upon by ARS cannot be powers coupled with an interest. *See Weinstein*, 326 P.3d at 317 (revocable power of attorney "inconsistent" with the "irrevocable nature of a 'power of attorney coupled with an interest'").

In sum, the powers of attorney relied upon by ARS are general powers of attorney that had to comply with the formalities contained in A.R.S. § 14-5501(D). Because ARS disregarded these requirements, the powers of attorney are invalid, and the claims it asserts in the names of the Patient Plaintiffs must be dismissed.

> **b.     Even if valid, the powers of attorney do not convey to ARS the right to assert claims in the Patient Plaintiffs' names.**

Even if the powers of attorney are valid under Arizona law, they do not convey to ARS the right to assert claims on behalf of, or in the names of, the Patient Plaintiffs. For its part, ARS alleges that the powers of attorney "empower[ed] ARS to do everything necessary, including bringing suit in [the Patient Plaintiffs'] names, to receive the benefits due and owing to them under their respective plans of insurance as reimbursement for the services provided to them by the OTCs." (*Id*. ¶ 48.) This interpretation is completely detached from the text of the powers of attorney; the powers of attorney attached to the Complaint say *nothing* about ARS bringing suit in the names of the Patient Plaintiffs. (*Id*., Ex., B (Specific Power of Attorney).) Instead, ARS cites to language in the "Authorization of Representation" and argues that it is somehow part of the power of attorney. It is not.

Under Arizona law, powers of attorney "should be strictly construed and the courts should never by construction extend the power they confer beyond that given in terms, or is absolutely necessary to carry that conferred into effect." *Lighting Delivery Co. v. Matteson*, 39 P.2d 938, 941 (Ariz. 1935); *see also Testa v. Emeritus Corp.*, 167 F. Supp. 1103, 1112 (N.D. Ill. 2016) (interpreting Arizona law and holding that powers of attorney must be construed narrowly). The powers of attorney relied upon by ARS unambiguously

grant it only five enumerated powers. (Dkt. 1, Ex. B.) The powers of attorney state: "This SPECIFIC POWER OF ATTORNEY grants the following," and then lists five powers that ARS is authorized to undertake on behalf of the Patient Plaintiffs. (*Id.*) Critically, none of the five powers authorizes ARS to bring suit on behalf of, or in the names of, the Patient Plaintiffs.

In a recent filing, ARS contended that certain language above the five enumerated powers grants ARS the ability to assert causes of action on the Patient Plaintiffs' behalf. (*See* Dkt. 95 at 11.) But, considered in full, this language provides that "it is [the patient's] intention that *the Plan and/or its fiduciaries* give Advanced Reimbursement Solutions L.L.C. on my behalf any and all claims, rights, appeals, and causes of action that I could bring pursuant to [ERISA]." (*Id.* (emphasis added).) This provision is nonsensical, as the ERISA plans and Aetna are not parties to Specific Power of Attorney agreement and they would not have the legal authority to give ARS the Patient Plaintiffs' claims or causes of action. In any event, the language plainly does not grant *ARS* the right to bring any claims or causes of action on the Patient Plaintiffs' behalf.

Because the powers of attorney relied upon by ARS are invalid under Arizona law, and do not convey to ARS the legal authority to assert claims in the names of the Patient Plaintiffs, the claims should be dismissed under Rules 12(c) and (h).

### VI.  ARS'S ROLE AS AN "AUTHORIZED REPRESENTATIVE" DOES NOT CURE ITS LACK OF STANDING.

ARS alleges that its "has standing to bring the ERISA claims in the names of the Patient [Plaintiffs] as the Authorized Representative, pursuant to the ERISA regulations, 29 C.F.R. § 2560.503.1(b)(4)."[7] (Dkt. 1, ¶¶ 12 & 52.) Federal courts—including in this

---

[7] In recent filings, ARS has retreated from this argument, apparently conceding that it does not provide ARS authority to assert claims in the names of the Patient Plaintiffs. (*See* Dkt. 95 at 9-10 (ARS's role as Patient Plaintiffs' authorized representative "not what's at issue here; rather, it is the other two concepts: assignment of benefits and Power of Attorney, as discussed below, and [sic] both of which confer standing on ARS to bring this lawsuit on the Patients' behalf.").) However, given the inclusion of this allegation in the Complaint, Aetna addresses it here.

District—have repeatedly rejected ARS's argument. *See AllianceMed LLC v. Aetna Life Ins. Co.*, No. CV-16-02435-PHX-JAT, 2017 WL 394524, at *2 (D. Ariz. Jan. 30, 2017) (plaintiff's argument that, as authorized representative, it had standing to enforce an ERISA policy was "inconsistent with the rules governing Article III standing, which require a plaintiff to have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable decision.") (quotation marks omitted); *Infoneuro Grp. v. Aetna Life Ins. Co.*, No. 2:16-cv-05083-AB (JCx), 2019 WL 3006549, at *9 (C.D. Cal. May 3, 2019) (29 C.F.R. § 2560.503-1(b)(4) does not provide "independent standing to sue Aetna in federal court as the members' authorized representative"); *Mem'l Hermann Health Sys. v. Pennwell Corp. Med. & Vision Plan*, No. H-17-2364, 2017 WL 6561165, at *10 (S.D. Tex. Dec. 22, 2017) (same); *Bay City Surgery Ctr., Inc. v. ILWU-PMA Welfare Plan Bd. Of Trs.*, No. CV 15-6209-MWF (AFMx), 2018 WL 4740331, at *5 (C.D. Cal. Apr. 10, 2018) ("[A]uthorized representatives do not have standing to sue under ERISA."); *Menkowitz v. Blue Cross Blue Shield of Ill.*, No. 14-2946, 2014 WL 5392063, at *3 (D.N.J. Oct. 23, 2014) (29 C.F.R. § 2560.503-1(b)(4) "applies to internal submission of claims and appeals on behalf of beneficiaries, not civil lawsuits in federal courts.").

## VII. ARS LACKS STANDING TO ASSERT CLAIMS IN ITS OWN NAME.

To the extent that ARS is asserting any claims directly against Aetna, they should be dismissed for lack of standing. To establish standing, ARS must demonstrate through its pleading that it: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020). ARS does not allege that it suffered any such injury. (*See* Dkt. 1, ¶ 1 ("This action is brought on behalf of patients who receive their health insurance from [Aetna . . . ].").) This is logical: because ARS is not entitled to benefits under the Patient Plaintiffs' insurance policies, "it cannot have sustained injury when those benefits were denied." *See AllianceMed LLC*, 2017 WL 394524, at *2. Because ARS has not alleged that it suffered an injury, and Federal Rule of Civil Procedure 17 requires that

actions "be prosecuted in the name of the real party in interest" except in circumstances inapplicable here, ARS's inclusion as a plaintiff is superfluous, it lacks standing, and its claims should be dismissed.

## VIII. CONCLUSION.

ARS has not alleged an injury in fact and it lacks the legal authority to assert claims in the names of the Patient Plaintiffs. Therefore, Aetna respectfully requests that the Court dismiss the Complaint pursuant to Rules 12(c) and 12(h) of the Federal Rules of Civil Procedure.

Respectfully submitted this 28th day of April, 2020.

**COPPERSMITH BROCKELMAN PLC**

By s/ Keith Beauchamp
  Keith Beauchamp
  Shelley Tolman

**ROBINS KAPLAN LLP**

  Jeffrey S. Gleason
  Jamie R. Kurtz
  Nathaniel J. Moore
  Eric B. Boettcher

*Attorneys for Defendants/Counterclaimants*
*The Aetna Life Insurance Company; Aetna Inc.;*
*and Aetna Health Inc.*

{00495343.1}                           16

## CERTIFICATION OF COUNSEL

Pursuant to Local Rule 12.1(c), the undersigned counsel certifies that on April 15, 2020, counsel for Aetna, ARS, and the Patient Plaintiffs conferred via telephone in good faith to determine whether an amendment could cure the deficiencies in the Complaint. The Parties were unable to agree that the issues identified in this motion could be cured by permissible amendment.

Respectfully submitted this 28th day of April, 2020.

**COPPERSMITH BROCKELMAN PLC**

By <u>s/ Keith Beauchamp</u>
   Keith Beauchamp
   Shelley Tolman

**ROBINS KAPLAN LLP**

   Jeffrey S. Gleason
   Jamie R. Kurtz
   Nathaniel J. Moore
   Eric B. Boettcher

*Attorneys for Defendants/Counterclaimants The Aetna Life Insurance Company; Aetna Inc.; and Aetna Health Inc.*