**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Advanced Reimbursement Solutions LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Aetna Life Insurance Company, et al., <br><br> Defendants. | No. CV-19-05395-PHX-DLR <br><br> **ORDER** |

Before the Court is Defendants The Aetna Life Insurance Company, Aetna, Inc., and Aetna Heath Inc.'s (collectively, "Aetna") combined motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(h)(3) (Doc. 104), which is fully briefed (Docs 144, 148).[1] As explained below, the Court will grant the motion but will also allow Plaintiff Advanced Reimbursement Solutions, LLC ("ARS") an opportunity to amend.[2]

**I.   Background**

This is an action brought by ARS not on its own behalf, but on behalf of 513 patients ("Patient Plaintiffs") who receive their health insurance from Aetna or from self-funded ERISA plans for whom Aetna provides administrative services. (Doc. 1 ¶¶ 1, 11.) The

---

[1] Oral argument is denied. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).
[2] Given this ruling, the Court will also deny without prejudice ARS's motion for partial summary judgment (Doc. 204) and as moot Aetna's motion for leave to file a sur-reply (Doc. 305). The Court cannot grant summary judgment, in whole or in part, unless and until it has the proper parties before it.

Patient Plaintiffs all received non-surgical services at certain outpatient treatment centers ("OTCs"). (*Id.* ¶ 25.) Before providing medical treatment to the Patient Plaintiffs, the OTCs contacted Aetna to verify that the Patient Plaintiffs were in fact covered by a plan administered by Aetna and to seek authorization to provide such treatment. In each case, Aetna informed the OTCs that the Patient Plaintiffs were covered and either authorized the OTCs to provide medical services or informed the OTCs that no authorization was necessary. (*Id.* ¶ 26.) ARS, which contracts with the OTCs to provide billing and other back-office services, billed Aetna for the services provided by the OTCs at the OTCs' customary billing rates. (*Id.* ¶¶ 10, 27.) Contrary to its representations, Aetna denied payment on the bills submitted by ARS, ostensibly because the OTCs did not meet provider requirements, even though on many occasions in years past, it paid the OTCs for the same services at issue. (*Id.* ¶¶ 28, 39.)

In exchange for and in connection with the services provided by the OTCs, the Patient Plaintiffs each executed assignments of benefits to the OTCs ("Assignments"). (Doc. 1-1 at 2.) The Patient Plaintiffs also signed a separate document, entitled Authorization of Representation and Specific Power of Attorney, which purported to authorize ARS to take various actions on behalf of the Patient Plaintiffs. (Doc. 1-1 at 4-6.)

ARS filed this action on behalf of the Patient Plaintiffs. Count One alleges that Aetna breached the relevant ERISA plan provisions by denying payment to ARS for the services rendered to the Patient Plaintiffs by the OTCs, thereby depriving the Patient Plaintiffs of their benefits under the terms of their ERISA plans. (Doc. 1 ¶¶ 52-56.) Count Two alleges that Aetna breached the relevant health insurance contracts by refusing to pay for the services rendered by the OTCs. (*Id.* ¶¶ 57-63.) Count Three alleges that Aetna has been unjustly enriched by its refusal to pay for the treatment provided to the Patient Plaintiffs by the OTCs. (*Id.* ¶¶ 64-69.)

**II.  Legal Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on

the pleadings "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. Cnty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999). "Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and . . . 'the same standard of review' applies to motions brought under either rule." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). A motion for judgment on the pleadings therefore should not be granted if the complaint is based on a cognizable legal theory and contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted).

ARS argues it is premature for the Court to decide a motion for judgment on the pleadings because the pleadings are not closed. (Doc. 144 at 6.) The Court agrees. "Pleadings are closed upon the filing of a complaint and an answer, unless a counterclaim, cross-claim or third-party claim is interposed, or the court orders a third-party answer." *Whitson v. Bumbo*, No. C 07-05597 MHP, 2009 WL 1515597, at *3 (N.D. Cal. Apr. 16, 2009) (citing Wright & Miller, Federal Practice and Procedure: Civil 3d § 1367 and Fed. R. Civ. P. 7(a)). Here, Aetna has filed counterclaims against ARS and the OTCs, and motions to dismiss those counterclaims remain pending. The pleadings therefore are not closed.

But the Court still must address the substance of Aetna's motion because Aetna has moved, as well, under Rule 12(h)(3), and unlike a motion for judgment on the pleadings, a motion to dismiss for lack of subject-matter jurisdiction may be asserted at any time. Indeed, "[i]f, on a motion for judgment on the pleadings, a party raises an issue as to the court's subject matter jurisdiction, the district judge will treat the motion as if it had been brought under Rule 12(b)(1)." *Kennard v. Lamb Weston Holdings, Inc.*, No. 18-cv-04665-YGR, 2019 WL 4278940, at *2 (N.D. Cal. Sept. 10, 2019) (internal quotation and citation omitted). Likewise, a motion for lack of subject-matter jurisdiction under Rule 12(h)(3) is treated as if brought under 12(b)(1). *See Hamidi v. Serv. Emps. Int'l Union Local 1000*,

386 F. Supp. 3d 1289, 1294 (E.D. Cal. 2019) ("The difference between a Rule 12(h)(3) motion and a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party.") (internal quotation and citation omitted).  The Court therefore will evaluate Aetna's motion under the standards applicable to Rule 12(b)(1) motions.

A challenge to a court's subject-matter jurisdiction may be either "facial" or "factual." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  When considering a factual attack, "the court may look beyond the complaint without having to convert the motion into one for summary judgment." *Ryan v. Salisbury*, 382 F. Supp. 3d 1031, 1048 (D. Haw. 2019).

**III.   Discussion**

Aetna argues that ARS's complaint is jurisdictionally defective because ARS lacks standing to bring claims on behalf of the Patient Plaintiffs.

The only parties who have direct standing to assert a claim under 29 U.S.C. § 1132(a)(1)(B) are plan participants or beneficiaries.  The Ninth Circuit also recognizes "derivative standing for health care providers to whom beneficiaries had assigned their benefit claims after receiving medical care from such providers." *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1080-81 (9th Cir. 2000), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007).  But the Ninth Circuit has declined to extend this rule to allow further assignments from healthcare providers to non-providers.  *Id.* at 1081.  Doing so "could lead to endless reassignment of claims, and it would allow third parties with no relationship to the beneficiary to acquire claims solely for the purpose of litigating them.  We do not see how such a result would further ERISA's purpose." *Id.*

1    ARS does not purport to bring this lawsuit on its own behalf, nor could it. It is neither a plan participant, plan beneficiary, nor assignee healthcare provider. ARS instead purports to bring this lawsuit on behalf of the 513 Patient Plaintiffs. Aetna argues that ARS lacks standing to do so because, according to ARS's own allegations, the Patient Plaintiffs validly assigned their rights to the OTCs. Consequently, if ARS's allegations are true, the OTCs are the real parties in interest and ARS would need to bring these claims on behalf of the OTCs, not on behalf of the Patient Plaintiffs.

If ARS's allegations regarding the validity of these assignments are true, Aetna's argument is correct. "It is the settled law of . . . the Ninth Circuit . . . that complete assignment of a claim divests the assignor of any remaining interest in the matter assigned." *St. Peter's Hospital v. Lexington Ins. Co.*, No. CV 16-91-H-SHE, 2018 WL 2470732, at *1 (D. Mont. June 1, 2018). If the Patient Plaintiffs assigned their claims to the OTCs, then the Patient Plaintiffs, as assignors, no longer have an interest in the matter assigned. *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1293 (9th Cir. 2014) (noting that beneficiaries who assigned to their provider the right to seek payment of benefits could not themselves seek payment of those claims). That interest instead would reside with the OTCs, *see Principal Mut. Life Ins. Co. v. Charter Barclay Hosp., Inc.*, 81 F.3d 53, 55 (7th Cir. 1996) ("[I]f there is a valid assignment the hospital becomes the only claimant[.]"), and ARS would need to bring suit on behalf of the OTCs rather than on behalf of the Patient Plaintiffs.

It is unclear why ARS believes it would have authority to sue on behalf of the Patient Plaintiffs if it is true that the Patient Plaintiffs assigned their claims to the OTCs. ARS seems to rely on paragraph 5 of the Assignments, which reads:

> **Appointment as Authorized Representative And Right to Sue:** I hereby designate Providers'[] designated billing company ("Advanced Reimbursement Solutions, LLC" or "ARS") as my duly authorized representative in connection with all matters arising from or relating to Services, Rights and Health Coverage, such that ARS completely and without reservation stands in my shoes and takes my place for all purposes, and is granted absolute power and legal authority to do, seek, claim, appeal or obtain anything that I would have been entitled to do, seek, claim, appeal or obtain in my own

>>capacity pursuant to or in connection with the Services, Rights or Health Coverage, in any legal, private, administrative, formal or informal process or forum whatsoever and without limitation, including any internal or external appeal, review, grievance or any other process, procedure or entitlement under any Health Coverage.

(Doc. 1 ¶ 13; Doc. 1-1 at 2.) But ARS fails to explain how the Patient Plaintiffs can, via paragraph 1 of the Assignments, assign all "rights, benefits, privileges, protections, claims and any other interest of any kind whatsoever" to the OTCs and later, in paragraph 5, appoint ARS to stand in their shoes "for all purposes" and with "absolute power and legal authority to do, seek, claim, appeal or obtain anything that [the Patient Plaintffs] would have been entitled to do[.]" (Doc. 1-1 at 2.) These two acts are inconsistent: on the one hand, assigning all rights to one party (the OTCs) and on the other granting "absolute power" to another (ARS). Although the OTCs, as assignees, might have the ability to appoint ARS as agent to act on their behalves, how the Patient Plaintiffs can do so after assigning away all "rights, benefits, privileges, protections, claims and any other interest of any kind whatsoever" is lost on the Court.[3]

ARS argues, however, that the Court cannot proceed on the assumption that the Patient Plaintiffs have validly assigned their claims to the OTCs because Aetna, as an affirmative defense to ARS's complaint, alleges that the Assignments are invalid "for lack or failure of consideration and/or because they are barred by anti-assignment provisions in the applicable health plans." (Doc. 23 ¶ 75.) Aetna counters that, because the Court must accept ARS's allegations as true for present purposes, it is of no moment that Aetna questions the validity of the Assignments. Aetna's argument elevates form over substance, while ignoring that the Court is not strictly limited to the complaint when resolving a motion to dismiss for lack of subject-matter jurisdiction. Aetna's answer clearly raises an issue as to the validity of the Assignments. If the Assignments are invalid, then the Patient

---

[3] The Assignments do not contain a severability clause, so if the Assignments are invalid, it would appear that paragraph 5 could not be independently enforced. Moreover, to the extent paragraph 5 is intended to appoint ARS as authorized representative pursuant to 29 C.F.R. 2560.503-1(b)(4), "[t]his provision applies to internal submission of claims and appeals on behalf of beneficiaries, not civil lawsuits in federal courts." *Menkowitz v. Blue Cross Blue Shield of Illinois*, Civ. No. 14–2946, 2014 WL 5392063, at *3 (D. N.J. Oct. 23, 2014).

1 Plaintiffs would remain the real parties in interest.

2 Assuming that the Patient Plaintiffs remain the real parties in interest, Aetna alternatively argues that ARS cannot bring suit on behalf of the Patient Plaintiffs because the Patient Plaintiffs have not validly authorized ARS to do so.  According to ARS, its authorization to sue on behalf of the Patient Plaintiffs derives from the Specific Powers of Attorney ("SPAs"), an example of which is attached as Exhibit B to its complaint.  Aetna argues that the SPAs are invalid because they do not comply with the witness and notarization requirements of Arizona law.  *See* A.R.S. § 14-5501(D)(4).  That much is true, and ARS does not argue otherwise.  Instead, ARS argues that these witness and notarization requirements do not apply because the SPAs qualify as powers coupled with interests, which are exempt from the witness and notarization requirements.  *See* A.R.S. § 14-5501(E)(2).  The Court disagrees.

A general "power of attorney" is a "written instrument by which a principal designates another person as the principal's agent."  A.R.S. § 14-5501(A).  In contrast, a "'power [of attorney] coupled with an interest' means a power that forms a part of a contract and is security for money or for the performance of a valuable act."  *Id.* § 5501(E)(2).  "This latter type of power is not merely an interest in the exercise of the power, but an interest in the property over which the power operates.  A power coupled with an interest survives the person giving it and is irrevocable."  *In re Indenture of Trust Dated January 13, 1964*, 326 P.3d 307, 317 (Ariz. Ct. App. 2014) (citing *Phx. Title & Trust Co. v. Grimes*, 416 P.2d 979, 981-82 (Ariz. 1966)).

The SPAs are not coupled with an interest separate from the exercise of the power.  At most, ARS's interest is derivative of the OTCs' interest in being reimbursed for their services.  According to the pleadings, ARS contracted with OTCs to perform billing and other back-office services in exchange for a percentage of all reimbursements received by the OTCs.  (Doc. 1 ¶ 10; Doc. 203-1 ¶ 4.)  In this way, ARS's contracts with the OTCs are analogous to contingent fee agreements, and the Arizona Supreme Court has held that "the existence of a contingent fee contract does not create an agency coupled with an interest[.]"

*Mubi v. Broomfield*, 492 P.2d 700, 703 (Ariz. 1972); *see also Todd v. Superior Court*, 184 P. 684, 688 (Cal. 1919) (explaining that the interest must be in the subject matter of the power and not merely in the proceeds that result from exercising it). As further proof that the SPAs are not powers coupled with interests, the SPAs are revocable. (Doc. 1-1 at 5 (patient "may revoke . . . the Specific Power of Attorney at any time").) Accordingly, because the SPAs are not powers coupled with interests and do not otherwise comply with Arizona's witness and notarization requirements, they are invalid.

Even if the SPAs were valid, the Court agrees with Aetna that the plain language of those documents do not authorize ARS to bring a lawsuit on behalf of the Patient Plaintiffs. "[P]owers of attorney should be strictly construed and . . . the courts should never by construction extend the power they confer beyond that given in terms[.]" *Lightning Delivery Co. v. Matteson*, 39 P.2d 938, 941 (Ariz. 1935). The SPAs purport to grant to ARS the following powers:

- Ability for ARS, or its agents or representatives to sign, endorse and complete on my behalf any settlement agreements, releases, checks, and/or other documents necessary to properly and completely execute any Authorization of Representation and/or Protected Health Information (PHI) forms and any and all corresponding claims.

- To claim on my behalf any benefits, reimbursements, damages, excise taxes and awards

- Directly communicate with the Plan Administrator of my employer.

- Direct the Third-Party Administrator to mail checks directly to ARS for processing

- To edit, complete, and/or fill out any Insurance carrier forms necessary to adjudicate the claim, appeal the claim, or interact with my employer or Insurance carrier

(Doc. 1-1 at 5.) None of these powers includes the power to file a lawsuit on behalf of the Patient Plaintiffs.

The SPAs also contain the following language: "[I]t is my intention that the Plan and/or its fiduciaries give Advanced Reimbursement Solutions L.L.C. on my behalf any and all claims, rights, appeals and causes of actions that I could bring pursuant to

Employment Retirement Income Security Act (ERISA)[.]" (*Id.*) But this language also does not confer on ARS the authority to file a lawsuit on behalf of the Patient Plaintiffs. Indeed, giving this provision a strict reading, it merely reflects an "intention" or hope on the part of the Patient Plaintiffs that their plans—which are not parties to the SPAs—will do something on their behalves. Thus, even if the SPAs qualified as powers coupled with interests, filing a lawsuit is not within the strict scope of the delegated powers.[4]

In sum, one of two things must be true: either (1) the Patient Plaintiffs validly assigned their claims to the OTCs, in which the OTCs would be the proper parties to bring this lawsuit, or (2) the Patient Plaintiffs did not validly assign their claims to the OTCs, in which case the Patient Plaintiffs remain the real parties in interest, but ARS lacks authorization to sue on their behalves. Both roads, however, lead to the same conclusion: ARS's complaint is defective.

ARS asks, in the alternative, for leave to amend its complaint to add the OTCs as plaintiffs. (Doc. 144 at 15.) When assessing the propriety of a motion for leave to amend, the court considers factors such as: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). "Generally, this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). ARS has not previously amended its complaint. Adding the OTCs as plaintiffs does not appear to be a futile exercise; even Aetna agrees that if the Patient Plaintiffs validly assigned their interests to the OTCs, "the OTCs would be the real parties in interest." (Doc. 104 at 8.) The Court finds no evidence of bad faith or undue delay. And Aetna does not claim it

---

[4] The SPAs appear in a document entitled "Authorization of Representation and Specific Power of Attorney." (Doc. 1-1 at 4.) This document is divided into three sections. The first is for personal identifying information. The second is titled "Authorization of Representation." And the third is entitled "Specific Power of Attorney." (Doc. 1-1 at 4-6.) ARS does not appear to rely on the Authorization of Representation section of this document. (*See* Doc. 95 at 10-11.) In any event, "authorized representatives do not have standing to sue under ERISA." *Bay City Surgery Center, Inc. v. ILWU-PMA Welfare Plan Board of Trustees*, Case No. CV 15-6209-MWF (AFMx), 2018 WL 4740331, at *5 (C.D. Cal. Apr. 10, 2018).

would be prejudiced by ARS's proposed amendment.  In fact, Aetna fails to meaningfully address ARS's request at all, arguing instead that "[w]hether ARS could have brought claims on behalf of the OTC[s] is of no import because it did not do so." (Doc. 148 at 12.) Although true, this observation is beside the point.  Because all factors weigh in favor of permitting ARS to amend its complaint, the Court will grant ARS's request.

**IT IS ORDERED** as follows:

1. Aetna's motion, construed as a motion to dismiss for lack of subject-matter jurisdiction, (Doc. 104) is **GRANTED**.

2. ARS's request for leave to amend is **GRANTED**.  ARS shall file its amended complaint within **14 days** of the date of this order.

3. ARS's motion for partial summary judgment (Doc. 204) is **DENIED** without prejudice to ARS renewing its request, if appropriate, after it has amended its complaint to cure the jurisdictional defects identified in this order.

4. Aetna's motion for leave to file a sur-reply in connection with ARS's motion for partial summary judgment (Doc. 305) is **DENIED** as moot.

Dated this 25th day of January, 2022.

Douglas L. Rayes
United States District Judge