Philip G. May, Esq. (AZ Bar No. 009764)
Devin Sreecharana, Esq. (AZ Bar No. 029057)
Justin R. DePaul, Esq. (AZ Bar No. 031581)
Kathleen A. Shaffer, Esq. (AZ Bar No. 035913)
**MAY, POTENZA, BARAN & GILLESPIE, P.C.**
1850 N. Central Avenue, Suite 1600
Phoenix, AZ  85004
Telephone:  (602)252-1900
Facsimile:  (602)252-1114
Email: pmay@maypotenza.com
Email: devin@maypotenza.com
Email: jdepaul@maypotenza.com
Email: kshaffer@maypotenza.com
*Attorneys for Plaintiffs/Counterdefendants*
*Valley Pain Centers LLC,*
*Valley Pain Centers of Peoria, LLC, and*
*Valley Pain Centers of Arizona, LLC*

Justin V. Niedzialek (025654)
**DUNN DESANTIS WALT & KENDRICK, LLP**
4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone:  (602) 842-2566
Facsimile:  (619) 255-4868
Email:  jniedzialek@ddwklaw.com
*Attorneys for Arrowhead Outpatient Treatment Center, LLC,*
*Lakeshore Interventional Treatment Center, LLC,*
*Mesa Outpatient Treatment Center, LLC,*
*Tempe Interventional Treatment Center, LLC,*
*Tempe Outpatient Treatment Center, LLC, and*
*West Valley OTC, LLC*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valley Pain Centers, LLC; Valley Pain Centers of Peoria, LLC; and Valley Pain Centers of Arizona, LLC; Arrowhead Outpatient Treatment Center, LLC; Lakeshore Interventional Treatment Center, LLC; Mesa Outpatient Treatment Center, LLC; Tempe Interventional Treatment Center, LLC; Tempe Outpatient Treatment Center, LLC; and West Valley OTC, LLC<br><br>Plaintiffs,<br><br>vs.<br><br>The Aetna Life Insurance Company; Aetna Incorporated; Aetna Health Incorporated; and Does 1-50,<br><br>Defendants. | Case No.: 2:19-CV-05395-DLR<br><br>**PLAINTIFFS' OMNIBUS FIRST AMENDED COMPLAINT FOR:**<br><br>**1. VIOLATIONS OF ERISA (29 U.S.C. § 1132(A)(1)(B))**<br>**2. BREACH OF CONTRACT**<br>**3. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**4. UNJUST ENRICHMENT**<br>**5. PROMISSORY ESTOPPEL**<br>**6. NEGLIGENT MISREPRESENTATION** |

| The Aetna Life Insurance Company; and Aetna Inc., | (Assigned to the Honorable Douglas L. Rayes) |
| Counterclaimants, | ***Jury Trial Demanded*** |
| vs. | |
| Advanced Reimbursement Solutions, LLC, et al., | |
| Counterdefendants. | |

For their Amended Complaint ("Amended Complaint"), Plaintiffs/Counterdefendants Valley Pain Centers, LLC, Valley Pain Centers of Peoria, LLC, Valley Pain Centers of Arizona, LLC (collectively, "Valley Pain"), Arrowhead Outpatient Treatment Center, LLC, Lakeshore Interventional Treatment Center, LLC, Mesa Outpatient Treatment Center, LLC, Tempe Interventional Treatment Center, LLC; Tempe Outpatient Treatment Center, LLC, and West Valley OTC, LLC (collectively, the "Arrowhead OTCs")  assert, complain, and allege as follows:

## I.

## SUMMARY OF ALLEGATIONS

1.     At relevant times Valley Pain and the Arrowhead OTCs (collectively, "Plaintiffs") have owned and operated healthcare facilities where patients ("Aetna Members") who receive their health insurance from Defendants Aetna Life Insurance Company, Aetna Incorporated, Aetna Health Incorporated, and Aetna Health Insurance Company (Arizona) (collectively, "Aetna"), or from self-funded ERISA plans for whom Aetna provides administrative services receive treatment from licensed healthcare providers.

2.     The basis for this action is Aetna's repeated violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002 *et seq.*, and the laws of the State of Arizona by and through its improper and serial denial of benefit payment claims billed on Plaintiffs' behalf to Aetna for medically necessary services that Aetna preauthorized (where necessary) and that Plaintiffs provided to the Aetna Members, each of whom validly and in writing assigned his or her benefits claims to the applicable Plaintiff.

3.     Lists of the benefit claims at issue in this action (the "Valley Pain Unpaid Claims") are collectively attached hereto as **Exhibit A**.  The lists include information which

identifies:

        (a) the Aetna Member name;

        (b) Date of service;

        (c) Plan number;

        (d) Group number;

        (e) Billed amount;

        (f) Payment amount; and;

        (g) the Valley Pain entity providing the service.

4.    The Arrowhead OTCs claims that are at issue in this Amended Complaint (the "Arrowhead OTCs Unpaid Claims" and, with the Valley Pain Unpaid Claims, collectively, the "Unpaid Claims") are comprised of those claims that were placed at issue by and through the complaint (Doc. 1) and amended complaint (Doc. 527) filed by ARS (the "Original Unpaid Claims").[1]

5.    Certain of the Valley Pain Unpaid Claims at issue in this Amended Complaint were included in the Original Unpaid Claims and previously placed at issue in this action by ARS's Complaint and Amended Complaint.

6.    The Valley Pain Unpaid Claims also include additional claims billed by ARS to Aetna on Valley Pain's behalf (which were not placed at issue through ARS's initial complaint) and claims billed to Aetna on Valley Pain's behalf by Valley Pain's other third party billing company, CollectRx, Inc. ("CollectRx") (the "Additional Unpaid Claims").

7.    For the Original Unpaid Claims previously placed at issue by ARS, Aetna has, upon information and belief, produced the related administrative record of documents.

8.    Aetna has not yet produced its administrative record of documents relevant to the Additional Unpaid Claims.

9.    Prior to the filing of this Amended Complaint, Valley Pain requested, in writing,

---

[1] ARS's Complaint (Doc. 1) and Amended Complaint (Doc. 527) included additional claims related to services rendered by other healthcare facilities and providers.  Those claims are not part of the Unpaid Claims at issue in this Amended Complaint.

that Aetna disclose the administrative record for the Additional Unpaid Claims and has provided Aetna with an unredacted copy of Exhibit A hereto.

10.     Because Aetna, and not Valley Pain, possesses the administrative record of documents for these Additional Unpaid Claims, Valley Pain will seek to further amend this Amended Complaint if, after Aetna produces such administrative record of documents, the facts alleged herein require amendment, supplementation, addition, or correction.

11.     Nonetheless, upon information and belief, each of the Unpaid Claims has associated with it a date(s) of service on which the Aetna Member received treatment at Valley Pain or the Arrowhead OTCs, Plan number(s), Group number(s), Claim number(s), billed amounts, and payment amounts (if any), even if that information is not presently known to Plaintiffs and/or included for a specific Valley Pain Unpaid Claim on Exhibit A at this time.

12.     The purpose of attaching Exhibit A to this Amended Complaint and separately providing an unredacted copy of Exhibit A to Aetna is to provide Aetna with such information as is reasonably available to Valley Pain such that Aetna has notice of the at-issue Valley Pain Unpaid Claims.

## II.

## JURISDICTION AND VENUE

13.     Plaintiffs bring this action pursuant to ERISA and pursuant to the laws of the State of Arizona.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that some of the claims asserted herein arise under the laws of the United States and necessarily involve adjudication of one or more federal questions.

15.     This Court also has subject matter jurisdiction over Plaintiffs' ERISA claims pursuant to 29 U.S.C. § 1132(e)(1) and ERISA § 502(e).

16.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, because there is a common nucleus of facts relating to Defendants' wrongful behavior.

17.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2) because a substantial part of the events or omissions giving rise to

the claims alleged herein occurred in this Judicial District, and Defendants conduct a substantial amount of business in this Judicial District, including marketing, advertising, and selling insurance products, and administering health plans within the Judicial District.

### III.

### THE PARTIES

**A.  Valley Pain**

18.     Each of the Valley Pain entities is, and at all relevant times was, a limited liability company organized and existing under the laws of Arizona, with its principal place of business in Maricopa County, Arizona.

19.     At relevant times, the Valley Pain entities owned and operated three healthcare facilities located in Maricopa County, Arizona.

20.     While they were in operation, Valley Pain's facilities have been licensed by and been in good standing with the State of Arizona Department of Health Services ("ADHS") as "Outpatient Treatment Centers" ("OTCs") pursuant to 9 A.A.C. Article 10.

21.     In addition, since January 2020, two of Valley Pain's facilities have also been licensed as Ambulatory Surgical Centers ("ASCs") by the United States Department of Health and Human Services Centers for Medicare and Medicaid Services ("CMS").  Valley Pain did not seek CMS certification for its third facility, which ceased operating in or around November 2021.

22.     Valley Pain has standing to bring its ERISA claims pursuant to valid, written assignments each of the Aetna Members associated with the Unpaid Claims provided to Valley Pain prior to receiving treatment at Valley Pain.  An example of the Assignment of Benefits that each Aetna Member provided to Valley Pain is attached hereto as **Exhibit B**.

**B.     Arrowhead OTCs**

23.     Each of the Arrowhead OTCs is, and was at all times relevant hereto, a limited liability company organized under the laws of the State of Arizona with its principal place of business in Maricopa County, Arizona.

24.     At all times relevant hereto, each of the Arrowhead OTCs was duly licensed by ADHS as an OTC, pursuant to 9 A.A.C. Article 10.

25.     The Arrowhead OTCs have standing to bring the ERISA and other claims related to the Unpaid Claims pursuant to the Assignment of Benefits that each of the Aetna Members provided to the Arrowhead OTCs.  [*See* Exh. B.]

26.     ARS, as the billing agent for the Arrowhead OTCs, included, along with other necessary records, the Assignment of Benefits as part of the claim submission process to Aetna for each Unpaid Claim and Aetna did not object during the administrative process to the pursuit of these Aetna Member claims pursuant to the Assignment of Benefits.

**B.**     **The Aetna Defendants**

27.     Plaintiffs are informed and believe that The Aetna Life Insurance Company, Aetna Incorporated, Aetna Health Incorporated, and Aetna Health Insurance Company (Arizona) are corporations duly organized and existing under the laws of the State of Arizona and/or are authorized to transact, and are in fact transacting, the business of insurance in Arizona.

28.     Plaintiffs are also informed and believe that the beneficiaries, members, and/or insureds of insurance plans underwritten, administered, and/or sold by Aetna, including the Aetna Members, reside in Arizona and received treatment at Valley Pain or the Arrowhead OTCs.

**C.**     **Other Payors**

29.     Plaintiffs are informed and believe that Aetna administers claims or benefit plans for other payors whose insureds were treated by Plaintiffs (the "Other Payors").

30.     Plaintiffs are informed and believe that Aetna is the authorized agent for the Other Payors.

31.     Plaintiffs are informed and believe that Aetna plays a core role for the Other Payors in that it effectively controls the decision of whether to honor or deny a claim under the plans, or the amount of the payment under the plans.

32.     Plaintiffs are informed and believe that Aetna functions as the plan administrator

in: (a) authorizing the provision of services to the Other Payors' members; (b) receiving bills from providers; (c) pricing bills from providers; (d) processing and administering the bills and appeals; (e) approving or denying the bills; (f) deciding not to arrange for transfer of members to in-network hospitals for post-stabilization services; (g) directing whether and how to pay bills; (h) issuing remittance advices and explanations of benefits on the bills; (i) communicating with providers regarding bills and services; (j) communicating with members regarding the bills and services; and (k) issuing payment.

33.     Plaintiffs are informed and believe that Aetna is in possession, custody, or control for the Other Payors of all facts, information and data concerning and related to the authorization, processing, pricing and payment of all bills submitted by or on behalf of Plaintiffs for services Plaintiffs rendered to Aetna Members whose plans are administered by Aetna.

34.     Plaintiffs are informed and believe that most or all of the Other Payors are plans regulated by ERISA.

35.     Plaintiffs are further informed and believe that, with respect to self-funded ERISA plans which have not specifically designated a plan administrator, Aetna functions as the *de facto* plan administrator or as the co-administrator because, *inter alia*, it has provided plan documents to participants, received benefit claims, evaluated and processed those claims, made benefit determinations, made and administered benefit payments, and handled appeals of benefit determinations.

36.     Moreover, Plaintiffs are informed and believe that, even with respect to self-funded ERISA plans which have not specifically designated a plan administrator, Aetna has been specifically designated as the claims administrator, and has been delegated the responsibilities described above.

37.     Specifically, with respect to all the Unpaid Claims under ERISA herein, including with respect to self-funded plans which have not been named as defendants in this action, Plaintiffs are is informed and believe that Aetna:

(a)     drafted and provided plan members with plan documents;

(b)    operated a centralized verification and authorization telephone number which handled calls for members of the self-funded plans, including plans that have not been named as defendants in this Amended Complaint;

(c)    authorized Plaintiffs to provide medical services to beneficiaries of the ERISA plans (*e.g.* Aetna Members);

(d)    received and processed electronic and paper bills from or on behalf of Plaintiffs for claims for members of the self-funded plans, including plans that are not named as defendants in this Amended Complaint;

(e)    communicated with Plaintiffs and its authorized billing companies on behalf of the ERISA plans (and additional self-insured plans that are not named as defendants) regarding authorization of surgical procedures;

(f)    exercised discretion to deny claims and in fact denied claims on behalf of the ERISA plans;

(g)    issued remittance advices and EOBs;

(h)    priced claims for the self-insured ERISA plans;

(i)    communicated with Plaintiffs and/or their authorized billing companies with respect to the processing of claims on behalf of the self-insured plans;

(j)    processed appeals, and sent appeal response letters; and

(k)    issued incorrect payments or caused the ERISA plans to issue incorrect payments to Plaintiffs.

38.    Accordingly, Aetna is a proper ERISA defendant because it "effectively controlled the decision whether to honor or to deny a claim..." *Cyr v. Reliance Life Ins. Co.,* 642 F.3d 1202, 1204 (9th Cir. 2011) (en banc), and because it "improperly den[ied] or cause[d] improper denial of benefits." *Spinedex Physical Therapy USA v. United Healthcare*, 770 F. 3d 1282, 1297 (9th Cir. 2014).

**D.    <u>DOE Defendants</u>**

39.    Plaintiffs do not know the true names or capacities, whether individual, corporate, associate, or otherwise, of defendant DOES 1 through 50, and therefore designates

those defendants by such fictitious names.

40.     Each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to and proximately caused the injuries suffered by Plaintiffs.

41.     Plaintiffs will amend this Amended Complaint to allege the true names and capacities of these DOES when the same become known to Plaintiffs.  DOES and Aetna are collectively referred to herein as "Defendants."

**IV.**

**ALLEGATIONS COMMON TO ALL CLAIMS**

**A.     Plaintiffs' Operations**

42.     At relevant times, Plaintiffs owned and operated healthcare facilities (the Arrowhead OTCs being licensed as OTCs and Valley Pain previously licensed as OTCs and now holding dual licenses as OTCs and ASCs) at which licensed providers (*e.g.* doctors, nurses, etc.) provide treatment (primarily pain management treatments) to patients, many of whom are Aetna Members.

43.     Unlike some healthcare providers who have contracted with Aetna and are therefore considered "in-network" providers with Aetna, Plaintiffs are not a party to a contracted fee schedule with Aetna.

44.     As a result, Plaintiffs are considered an "out-of-network" providers under most, if not all, of the plans Aetna insures or administers on behalf of Other Payors, including the plans relevant to the Unpaid Claims (each a "Plan" and collectively the "Plans").

45.     Although Valley Pain is not "in-network" with Aetna, it has gone through a separate "credentialing" process with Aetna on multiple occasions throughout its existence, whereby Aetna has requested and Valley Pain has provided various information about Valley Pain's professional qualifications, including information regarding Valley Pain's training, licensure, tax identification number, and certifications and/or registrations in particular healthcare fields.

46.     By and through its credentialing process, Aetna evaluated whether Valley Pain

met Aetna criteria relating to licensing, professional competence and conduct and collected and stored for future reference virtually all the information necessary to understand the type of facilities Valley Pain operates, how those facilities are licensed by state and federal government bodies, and the services Valley Pain offers to Aetna Members.  Upon information and belief, Aetna only processes claims submitted by providers it has credentialed.

47.    At  times relevant to the Unpaid Claims, Plaintiffs retained one or more third-party billing companies to collect and assemble relevant documentation and to submit bills to insurance companies, including Aetna, on Plaintiffs' behalf.

48.    Each of the Unpaid Claims was billed to Aetna on the Arrowhead OTCs' behalf by ARS and on Valley Pain's behalf by either ARS or CollectRx (collectively the "Billing Companies").

**B.    Plaintiffs' Pre-Treatment and Billing Procedures.**

49.    With respect to each of the Unpaid Claims at issue in this action, the Aetna Member received medically necessary, non-surgical services (principally pain management services) from medical providers at Plaintiffs' facilities.

50.    For each of the Unpaid Claims, Plaintiffs and their respective Billing Companies followed a substantially identical process prior to and after Plaintiffs provided treatment to the Aetna Member, the purpose of which was to ensure that Plaintiffs would be paid for the services rendered to the Aetna Member.

**1.    Plaintiffs sought and obtained confirmation from Aetna that the Aetna Member had out-of-network coverage and that Plaintiffs were authorized to provide treatment.**

51.    Because Plaintiffs are not privy to the terms and provisions of an Aetna Member's Plan when approached by an Aetna Member seeking treatment, each Plaintiff requests and relies upon certain information from Aetna to determine whether it will agree to treat the Aetna Member.

52.    For each of the Unpaid Claims, Plaintiffs contacted Aetna prior to providing medical treatment to verify that the Aetna Member was in fact covered by a plan insured or

administered by Aetna and to confirm that the plan provided out-of-network benefits for the type of treatment the Aetna Member sought to obtain from the relevant Plaintiff.

53.     Aetna, either on behalf of itself or the self-funded plans, informed Plaintiffs that the Aetna Member was covered and had out-of-network benefits for the type of treatment the Aetna Member sought to obtain from the relevant Plaintiff.

54.     If Aetna had not confirmed the Aetna Member was insured and had out-of-network benefits covering the treatment the Aetna Member sought from Valley Pain, Valley Pain would not have provided services in connection with any of the Unpaid Claims or, alternatively, would have required the Aetna Member to cash pay in advance for his or her treatment.

55.     With respect to each of the Original Unpaid Claims placed at issue by ARS (and at issue again herein), the Aetna Member's Plan: (1) provides out-of-network covered benefits for eligible health services for which Aetna is obligated to pay; (2) expressly provides or fails to validly exclude out-of-network coverage for pain management and similar services and treatments such as those actually provided by Plaintiffs; and, (3) expressly provides or fails to validly exclude out-of-network coverage for treatment at a facility such as Plaintiffs.

56.     Upon information and belief, with respect to each of the Additional Unpaid Claims (not previously placed at issue by ARS and for which the administrative record has yet to be produced), the Aetna Member's Plan: (1) provides out-of-network covered benefits for eligible health services for which Aetna is obligated to pay; (2) expressly provides or fails to validly exclude out-of-network coverage for pain management and similar services and treatments such as those actually provided by Valley Pain; and, (3) expressly provides or fails to validly exclude out-of-network coverage for treatment at a facility such as Valley Pain.

57.     In addition to confirming the existence of out-of-network coverage for the treatment the Aetna Member sought, Plaintiffs also sought authorization from Aetna to provide such treatment during its pre-treatment communications with Aetna in connection with each of the Unpaid Claims.

58.     Aetna, either on behalf of itself or the self-funded plans, either authorized

Plaintiffs to provide treatment or informed Plaintiffs that no authorization was necessary.

59.     Based on the pre-authorizations that Plaintiffs obtained from Aetna with respect to each of the Unpaid Claims, each relevant Aetna Member was associated with an insurance plan that provided for payment of out-of-network benefits with respect to each of the Unpaid Claims.

60.     Plaintiffs would not have provided services in connection with the Unpaid Claims if Aetna had not authorized treatment or confirmed that no such authorization was required.

### 2.     Plaintiffs obtained an assignment of benefits from each Aetna Member authorizing Plaintiffs to bill and collect payment from Aetna for their services.

61.     As a condition of receiving care at Valley Pain or the Arrowhead OTCs in connection with each Unpaid Claim, the Aetna Member knowingly, willingly, validly, and in writing assigned his or her benefits to the relevant Plaintiff.

62.     Such assignments, which are standard in the industry, were intended to authorize and did authorize Plaintiffs to, among other things, obtain information from Aetna, including the information discussed above regarding coverage and authorization, and to bill Aetna, collect benefit payments originally due to the Aetna Member from Aetna for Plaintiffs' services, and to enforce the Aetna Member's rights in connection with his or her Plan.  [*See* Ex. B.]

63.     Specifically, each Assignment of Benefits states, in relevant part, that the Aetna Member irrevocably assigned to the respective Plaintiff all of their

> rights, benefits, privileges, protections, claims and any other interests of any kind whatsoever, without limitation, including, without limitation, direct payment to Provider for the Services, appeal rights, rights to fiduciary duties, rights to sue, rights to payment, rights to penalties or interest, rights to plan documents, and rights to information, notices and disclosures from any source,… that I had, have or may have in the future pursuant to or in connection with any insurance plan, health benefit plan, trust, fund or any other source of payment, insurance, indemnity or health or medical coverage of any kind…

*Id.*

64.     The Assignment of Benefits further instructed the Aetna Members' "applicable

12

insurance plan, health benefit plan, trust, fund or any other source of payment, insurance, indemnity or health or medical coverage" (*i.e.,* Aetna) to advise Plaintiffs of any anti-assignment provision in their policy/plan. *Id.*

65.     Because Plaintiffs, and not the Aetna Member himself/herself, contacted Aetna to verify the Aetna Member's out-of-network benefits and to obtain authorization, Aetna knew or should have known that the Aetna Member had assigned his/her benefits to Plaintiffs in connection with each Unpaid Claim before the relevant Plaintiff actually rendered treatment to the Aetna Member.

66.     At no time during these pre-treatment communications did Aetna notify Plaintiffs that the Aetna Member's Plan prohibited the Aetna Member from assigning his or her benefits to Plaintiffs or that Aetna would refuse to honor any of the Unpaid Claims on the basis that the Aetna Member had impermissibly assigned his or her benefit claims to Plaintiffs.

67.     Had Aetna informed Plaintiffs that the Plans prohibited assignment, or that Aetna would refuse to honor such claims on the basis that the Aetna Member had impermissibly assigned his or her benefit claims to Plaintiffs, Plaintiffs would not have provided services or, alternatively, would have required the Aetna Member to pay cash in advance for his or her treatment.

68.     With respect to each of the Original Unpaid Claims placed at issue by ARS (and at issue herein), the Aetna Member's health insurance plan either does not contain a provision prohibiting the Aetna Member from assigning his or her benefits claims to Plaintiffs or, if it does, Aetna waived such provision during the claims submission and adjudication process by failing to object on such grounds.   Upon information and belief, the same is true with respect to each of the Additional Unpaid Claims not previously placed at issue by ARS.

69.     For each of the Valley Pain Unpaid Claims billed by CollectRx, the Aetna Member executed a similar document which confirmed that the Aetna Member: (1) had insurance coverage; (2) had assigned to Valley Pain all insurance benefits otherwise payable to the Aetna Member; and (3) had authorized Valley Pain to release information necessary to secure the payment of benefits.  An exemplar of this document is attached as **Exhibit C**.

70.     Both of the assignment documents confirmed that the Aetna Member remained financially responsible for the amounts due for services rendered by the relevant Plaintiff, notwithstanding Plaintiffs' efforts to seek benefits due from Aetna pursuant to the Aetna Member's Plan.

71.     For Valley Pain, a copy of one or both of these forms, depending upon whether ARS or CollectRx billed such claim, was submitted to Aetna during the claim submission process in connection with each Unpaid Claim, prior to Aetna rendering its initial determination as to whether it would pay the claim.

72.     Similarly, each of the Unpaid Claims submitted to Aetna by ARS on behalf of the Arrowhead OTCs included, among other necessary documentation, the Aetna's Members' executed Assignment of Benefits.

73.     Furthermore, with respect to each Unpaid Claim, the billing form submitted to Aetna as part of the claim submission process included a section which expressly indicated that the Aetna Member had assigned his or her benefits to Plaintiffs.

74.     Thus, for each Unpaid Claim, Aetna was apprised of and knew that the Aetna Member had assigned his or her benefit claims to Valley Pain when Aetna confirmed coverage and authorized treatment and when Aetna rendered a determination as to whether it would pay such claims.

75.     Aetna did not object or otherwise question the Aetna Members' assignments to Plaintiffs nor did Aetna inform ARS, CollectRx, Plaintiffs, or the Aetna Members that Aetna would refuse to pay for the pre-authorized, necessary medical services on any other grounds.

        **3.**    **For Unpaid Claims after September 2020, Valley Pain Collected Estimated Patient Cost Share Amounts from Aetna Members.**

76.     Based on Aetna's representations following the commencement of this action, and upon information and belief, many healthcare plans offered by Aetna contain provisions under which the Aetna Member may be responsible for paying a provider such as Valley Pain directly for certain portions of the cost associated with his or her healthcare—*e.g.* co-pays, co-insurance/payment percentage, and deductibles (referred to herein as "Cost Share").

77.     For each of the Unpaid Claims, Valley Pain's general awareness that the Aetna Member's Plan contained Cost Share provisions prior to treating the Aetna Member arose only to the extent that such information was either disclosed by Aetna during its pre-treatment communications with Valley Pain or was apparent from the insurance card Aetna provided to the Aetna Member.

78.     Even where Valley Pain was aware generally that a particular Aetna Member had a Plan that contained Cost Share provisions before Valley Pain treated that Aetna Member, Valley Pain was not privy to the specific terms of that Aetna Member's Plan, if any, regarding or relating to the Aetna Member's Cost Share obligations.

79.     Furthermore, while certain components of Cost Share in most healthcare plans are flat amounts (for example, a $30 co-pay) the amount of other components of Cost Share (*e.g.* co-insurance/payment percentage) are often unknown and unknowable to Valley Pain until after Aetna has adjudicated a claim and calculated the amount it will pay for the services rendered (*e.g.* Aetna's own payment percentage).

80.     Although Aetna Members remained responsible to Valley Pain for the full amount Valley Pain charged for the services Valley Pain rendered to the Aetna Member, Valley Pain elected not to collect Cost Share amounts from Aetna Members as a matter of practice for a portion of the time relevant hereto, thereby reducing the cost of care to Aetna Members.

81.     At no time during Valley Pain's pre-treatment communications with Aetna, the claims submission process, or in connection with any appeals did Aetna notify Valley Pain in connection with any of the Unpaid Claims that as a contractual condition of reimbursement under the applicable insurance Plan, the Aetna Member was required to pay to Valley Pain Cost Share or that Valley Pain was required to collect Cost Share for the services Valley Pain rendered to the Aetna Member.

82.     In fact, at no time during Valley Pain's pre-treatment communications with Aetna, the claims submission process, or in connection with any appeals requested did Aetna ever request any information from Valley Pain about the Aetna Member's payment of Cost Share amounts during pre-treatment communications or the claim submission and adjudication

process for any of the Unpaid Claims.

83.    At no time during Valley Pain's pre-treatment communications with Aetna, the claims submission process, or in connection with any appeals did Aetna ever disclose to Valley Pain that it would refuse to honor its payment obligations to the Aetna Member and/or Valley Pain (as the Aetna Members' authorized assignee) if the Aetna Member did not pay, or Valley Pain did not collect, the Aetna Member's Cost Share amounts.

84.    Furthermore, upon information and belief, Aetna did not conspicuously articulate such a policy on its website in a manner intended to communicate the existence or terms of any out-of-network "cost share payment" policy to Valley Pain (or the Aetna Members) at any time relevant hereto.

85.    Although Valley Pain has been an out-of-network provider for Aetna Members for over a decade, Aetna never communicated such a policy to Valley Pain in any of the Explanation of Benefits ("EOBs") Aetna has issued to Valley Pain, whether in connection with the Unpaid Claims or otherwise.

86.    Aetna's EOBs often include a calculation of an Aetna Member's co-insurance/payment percentage amount, as described above.  But, upon information and belief, none have ever advised Valley Pain or the Aetna Member that the Aetna Member was required to pay such amount to Valley Pain as a condition of Aetna's obligation to pay its own portion of the applicable charges.

87.    With respect to the Original Unpaid Claims placed at issue by ARS (and at issue herein), a substantial number of the Aetna Members' health insurance plans do not, either expressly or in any other manner calculated to be understood by the Aetna Member, state that the Aetna Member must pay Cost Share in order to have covered benefits or, alternatively, state that Aetna is relieved of its obligation to pay its portion of the healthcare costs it has agreed to pay if the Aetna Member does not pay such Cost Share.

88.    Upon information and belief, with respect to the Additional Unpaid Claims (not previously placed at issue by ARS and for which the administrative record has yet to be produced), a substantial number of the Aetna Members' health insurance plans do not, either

expressly or in any other manner calculated to be understood by the Aetna Member, state that the Aetna Member must pay Cost Share in order to have covered benefits or, alternatively, state that Aetna is relieved of its obligation to pay its portion of the healthcare costs it has agreed to pay if the Aetna Member does not pay such Cost Share.

89.     Had Aetna disclosed such a policy prior to Valley Pain's treatment of the Aetna Member in connection with each of the Unpaid Claims, Valley Pain would have collected or attempted to collect such Cost Share or, alternatively, would have advised the Aetna Member to seek treatment elsewhere.

90.     In 2020, Valley Pain received an EOB from another insurance company competitive with Aetna in the insurance market that, under the terms of that insurance company's plans and policies, members were obligated to pay out-of-network providers such as Valley Pain Cost Share to qualify for claim payments.

91.     Upon receiving such notification, Valley Pain elected to begin collecting Cost Share amounts from all its patients, including Aetna Members, beginning in September 2020.

92.     Since then, Valley Pain has collected or made good faith efforts to collect Cost Share from each of the patients it treats who have insurance, including Aetna Members.

93.     Thus, for a portion of the Unpaid Claims, Valley Pain made a reasonable effort to collect Cost Share from Aetna Members, despite never being advised by Aetna of any obligations to do so.

### 4.     Based on Aetna's Representations and Omissions, Plaintiffs Provided Treatment to the Aetna Members and Billed Aetna.

94.     For each Unpaid Claim, Plaintiffs provided treatment to the Aetna Member in reliance upon: (a) Aetna's confirmation that the Aetna Member was covered by a Plan with out-of-network benefits; (b) Aetna's representation that Plaintiffs were authorized to provide treatment if such authorization was necessary; and (c) Aetna's failure to raise any basis, founded on the terms of the Aetna Member's Plan or otherwise, indicating that Aetna may refuse to make payment to Plaintiffs for such services.

95.     In short, based on Aetna's conduct prior to Plaintiffs' treatment of an Aetna

Member in connection with each of the Unpaid Claims, Plaintiffs reasonably understood and expected that Aetna would pay Plaintiffs for such services.

96.   As a result, Plaintiffs expended valuable resources, supplies, and employee time, and incurred other expenses in connection with the services it provided to the Aetna Member.

### C.   Aetna Begins Wrongfully Denying Claims

97.   For each of the Valley Pain Unpaid Claims, either ARS or CollectRx billed Aetna on Valley Pain's behalf.

98.   For each of the Arrowhead OTCs Unpaid Claims, ARS billed Aetna on behalf of the Arrowhead OTCs.

99.   In or around April 2018, notwithstanding Aetna's representations to Plaintiffs that the Aetna Members were covered and that Plaintiffs were authorized to provide medical treatment (if authorization was necessary), Aetna, either on behalf of itself or as administrator on behalf of the Other Payors, began serially denying payment on the bills submitted on Plaintiffs' behalf.

100.   According to the EOBs Aetna submitted to Valley Pain and/or the Billing Companies in connection with these Unpaid Claims, Aetna's denials were based on its determination that Valley Pain "did not meet provider requirements."

101.   The determination that the Arrowhead OTCs "did not meet the provider requirements" was the only basis provided by Aetna in denying the Unpaid Claims.

102.   Aetna's EOBs did not inform the Arrowhead OTCs, ARS, or the Aetna Members that Aetna was refusing (or would in the future refuse) to pay for the medical services provided by the Arrowhead OTCs on any other basis.

103.   Prior to denying these claims, Aetna did not inform Plaintiffs, the Billing Companies, or the Aetna Members that Aetna would refuse to pay for the medical services provided by Plaintiffs on the grounds that Plaintiffs "did not meet provider requirements."

104.   Aetna's EOBs did not articulate with reasonable detail the basis for Aetna's contention that Valley Pain "did not meet provider requirements."

105.   Nor did Aetna's EOBs reference any term of any particular Plan to support its

position that Plaintiffs "did not meet the provider requirements."

106.   On an ongoing basis for more than a decade, Aetna paid Valley Pain as an out-of-network provider for the same services provided in connection with the Unpaid Claims and never denied Valley Pain's claims on the grounds that Valley Pain's facilities "did not meet provider requirements" or on any of the other grounds upon which Aetna claims justify its refusal to pay the Unpaid Claims.

107.   Similarly, on numerous occasions over a number of years, Aetna paid the Arrowhead OTCs for the same services that are at issue in the Unpaid Claims.

108.   In those instances, Aetna did not deny the Arrowhead OTCs' claims on the grounds that they "did not meet the provider requirements" or on any other grounds.

109.   Instead, in those instances, Aetna's EOBs typically stated that "[t]he member's plan provides coverage for charges that are reasonable and appropriate" and would then set forth, among other information, the payable and issued amounts.

110.   Furthermore, during the timeframe relevant to the Unpaid Claims, other insurance companies and payors, both on behalf of themselves for their insured members or on behalf of self-funded ERISA plans, have paid Plaintiffs for the very same services that are at issue in this case.

111.   Critically, Aetna's EOBs/denials did not inform Plaintiffs, the Billing Companies, or the Aetna Members that Aetna was refusing (or would in the future refuse) to pay for the medical services provided by Plaintiffs on any other basis, including that:

   (a)    the Aetna Members did not have coverage for the pain management services they received;

   (b)    the Aetna Members' were prohibited from assigning their benefit claims to Plaintiffs;

   (c)    the Aetna Members did not have coverage for out-of-network charges from licensed OTCs; or

   (d)    the Aetna Members did not have coverage if they did not pay Cost Share amounts to Plaintiffs.

**D.**   <u>Aetna's Communications with ARS and Letters to Plaintiffs</u>

112.   On behalf of Plaintiffs and similarly situated facilities, ARS repeatedly communicated with Aetna to clarify the grounds on which Aetna was denying payment for services rendered by Plaintiffs to Aetna Members.   Upon information and belief, these communications included phone calls, emails, and letters sent by ARS to Aetna to clarify the grounds for Aetna's repeated refusal to make the payments due and owing under the Aetna Members' respective plans of insurance.

113.   Aetna responded to ARS' repeated requests for clarification in an email dated April 17, 2018, which reiterated Aetna's denials and informed ARS that Aetna would not be making any payments on the Unpaid Claims (and claims by ARS on behalf of other OTCs).

114.   Aetna's April 17, 2018 email gave the following grounds for Aetna's payment denials:

> Upon receipt of your email, we immediately reached out to our Special Investigations Unit to have your concerns reviewed.   We were advised that the claims submitted by the three facilities above are for surgical procedures, anesthesia, injections and surgical supplies for services that do not require inpatient care in a hospital as well as revenue codes for facility fees.   These procedures and services would be rendered in an outpatient surgery center based upon the State of Arizona Administrative Code Title 9 Ch. 10 under #139.   These services do not fit the description of an outpatient treatment center per the State of Arizona Administrative Code Title 9 Ch. 10 #140.

> The facilities above are licensed as Outpatient Treatment Centers and not an Outpatient Surgery Centers.   The State of Arizona describes an outpatient treatment center as "a class of health care institution without inpatient beds that provides physical health services or behavioral health services for the diagnosis and treatment of patients."   These types of services are not being billed by the three facilities above.

115.   Thus, Aetna's April 17, 2018 email claimed the services Plaintiffs (and other OTCs) were rendering to Aetna Members and billing to Aetna were surgical services that did not fit the description of services provided at an OTC per Arizona Administrative Code Title 9, Ch. 10 #140.

116.   Aetna's April 17, 2018 email reveals that its repeated denial of payment for the services rendered by Plaintiffs were based on a misunderstanding of Arizona law and the procedures provided by Plaintiffs, despite Aetna's own credentialing of Plaintiffs.

117.   As alleged above, the medical services that Plaintiffs provided to the Aetna Members were not surgery services, but rather were non-surgical services that Plaintiffs are and have always been licensed to provide.

118.   Under Arizona law, "outpatient treatment center" means "a class of health care institution without inpatient beds that provides physical health services or behavioral health services for the diagnosis and treatment of patients." Ariz. Admin. Code R9-10-101 (149).

119.   Facilities licensed as OTCs are authorized to provide "physical health services," which are defined to include "medical services, nursing services, health-related services, or ancillary services provided to an individual to address the individual's medical condition." Ariz. Admin. Code R9-10-101.

120.   The services provided by Plaintiffs to the Aetna Members in connection with the Unpaid Claims are "medical services" under Arizona law and which Plaintiffs are licensed under Arizona law to provide.

121.   The statutory definition of "medical services," under which the administrative rule was adopted, is services that "pertain to medical care and that are performed at the direction of a physician on behalf of patients by physicians, dentists, nurses and other professional and technical personnel." A.R.S. § 36–401(A)(30).

122.   "Treatment" under the rule is defined as a "procedure or method to cure, improve, or palliate an injury, an illness, or a disease." Ariz. Admin. Code R9-10-101.

123.   There is no provision of Arizona law limiting the definition of "medical services" which OTCs, including Plaintiffs, may be licensed to provide.

124.   Indeed, after Aetna began serially denying payment, Valley Pain contacted ADHS to confirm that its OTC license permits it to perform the type of services it provides to Aetna Members.

125.   In a written response in late 2018, ADHS confirmed that, in Arizona, an OTC is a freestanding facility that is not an exempt provider licensed under Title 32 (*i.e.* a physician) and that provides physical health services for the diagnosis or treatment of patients on an outpatient basis, and that physical health services include medical services provided to an

individual to address the individual's medical condition.

126.  ADHS further confirmed that it does not authorize specific procedures, surgical or otherwise, that may be performed in a licensed OTC.

127.  Moreover, before receiving a license from the Arizona Department of Health Services to operate an OTC, Plaintiffs provided to the Department its proposed scope of services, which encompassed all the services provided to the Aetna Members in connection with the Unpaid Claims.

128.  Before issuing the licenses, the Department was legally required to, and on information and belief, did review Plaintiffs' scope of services to determine whether the requested license was appropriate.

129.  Arizona law is clear that Aetna's grounds for denying payment for the services rendered by Plaintiffs was and remains incorrect.

130.  Arizona law permits OTCs like Plaintiffs to provide all the services provided to the Aetna Members in connection with the Unpaid Claims, and the ADHS in fact licensed Plaintiffs to provide such services.

131.  Furthermore, for a portion of the time relevant hereto, two of Valley Pain's facilities were also licensed by CMS as ASCs.

132.  Aetna itself has paid for such services when rendered by Valley Pain in the past, despite its knowledge through the credentialing process that Valley Pain's facilities were, at certain times relevant hereto, licensed as OTCs.

133.  Similarly, Aetna itself has paid for the same services that it is now refusing to pay for when such services were rendered by the Arrowhead OTCs in the past.

134.  Neither Arizona law, nor the status of Plaintiffs' respective OTC licenses granted by ADHS have changed in any meaningful way between the time during which Aetna paid for the same treatments it has denied here.

135.  Moreover, prior to the commencement of this action, Plaintiffs were not notified by any other health insurer that an OTC is not licensed to provide the same treatments at issue here to their members.

136.   Aetna followed its communications with ARS with a letter to Valley Pain on July 25, 2018, wherein Aetna wrote "to advise [Valley Pain] of Aetna's reimbursement policy which does not allow payment for facility fees for office based surgery."  A copy of Aetna's letter is attached as **Exhibit D**.

137.   In short, rather than claiming Valley Pain was billing for services not covered by its OTC license (as Aetna had in its communications with ARS), Aetna's instead stated for the first time in its July 25, 2018 letter that in order to be reimbursed for facility fees under Aetna's "reimbursement policy," Valley Pain was required to be licensed "as an Ambulatory Surgical Center or whatever comparable title is used by a state's licensing law to describe a freestanding facility, other than a physician's office, where surgical and diagnostic services are provided on an ambulatory basis."

138.   Aetna's July 25, 2018 letter continued that "[i]n the absence of state licensure requirements, evidence of Medicare eligibility or certification as an Ambulatory Surgical Center under 42 CFR 415 must be provided."

139.   Critically, Aetna's July 25, 2018 letter also confirmed that "[e]ffective immediately, Aetna will not reimburse claims for facility fees or related surgical care charges that are billed by Valley Pain Centers."

140.   Aetna sent substantially similar letters to certain Arrowhead OTCs.

141.   Like the July 25, 2018 letter received by Valley Pain, the letters received by the Arrowhead OTCs also stated that:

(a) "[a]ccording to Aetna's reimbursement policy, in order to be reimbursed for facility fees or any related surgical care charges… for any surgical procedure, the entity must be licensed by the state where the facility operates as an Ambulatory Surgical Center or whatever comparable title is used by a state's licensing law…"

(b) "[i]n the absence of state licensure requirements, evidence of Medicare eligibility or certification as an Ambulatory Surgical Center under 42 CFR 415 must be provided"

(c) "[e]ffective immediately, Aetna will not reimburse claims for facility fees or related surgical care charges that are billed by" the applicable Arrowhead OTCs (and, indeed, all of the Arrowhead OTCs).

142.    Prior to delivery of the foregoing letters, Aetna did not disclose its purported reimbursement policy to Plaintiffs and, as noted above, had instead repeatedly paid claims submitted by or on behalf of Plaintiffs for many years without claiming Plaintiffs' status as a licensed OTC was insufficient under Aetna policy.

143.    Aetna's letters to Plaintiffs did not indicate when Aetna's purported reimbursement policy had gone into effect or whether it had been changed, and if so, when.

144.    Nor did Aetna's letters identify a specific term in any Plan relevant to the Unpaid Claims.  To the contrary, with respect to each of the Original Unpaid Claims previously placed at issue by ARS (and at issue herein), the Aetna Member's health insurance Plan does not, either expressly or in another manner calculated to be understood by the Aetna Member, state that Aetna will not pay charges for non-surgical pain management treatments the Aetna Member receives at an out-of-network OTC.

145.    Upon information and belief, with respect to each of the Additional Unpaid Claims (not previously placed at issue by ARS and for which the administrative record has yet to be produced), the Aetna Member's health insurance Plan does not, either expressly or in another manner calculated to be understood by the Aetna Member, state that Aetna will not pay charges for non-surgical pain management services the Aetna Member receives at an out-of-network OTC.

146.    Aside from Valley Pain's licensure as an OTC, Aetna's July 25, 2018 letter did not raise any other basis for its denial of any of the Unpaid Claims submitted through the date of the letter or any other basis why it would deny claims submitted by or on behalf of Valley Pain subsequent to Aetna's July 25, 2018 letter.

147.    Similarly, aside from the Arrowhead OTCs' licensure as an OTC, Aetna's letters did not raise any other basis for its denial of any of the Unpaid Claims submitted through the date of the letters or any other basis why it would deny claims submitted by or on behalf of the

Arrowhead OTCs subsequent to Aetna's letters.

**E.      Valley Pain Obtained Additional Licensure Through CMS**

148.    Shortly after receiving Aetna's July 25, 2018 letter, Valley Pain responded in writing and provided Aetna with copies of its licenses issued by ADHS which, upon information and belief, Aetna had already obtained through the credentialing process or otherwise.  Nonetheless, Aetna continued to deny claims submitted by or on behalf of Valley Pain, serially and without justification.

149.    Although it disagreed that Aetna had any basis to deny Valley Pain's claims as a result of Valley Pain's licensure, when it became apparent that Aetna would continue to refuse to pay such claims, and in response to Aetna's reference to certification as an ASC under 42 CFR 415 in its July 2018 letter, Valley Pain began the process with CMS to obtain ASC licenses for two of its facilities in or around August 2018 and obtained such licenses effective in January 2020.  The third facility closed shortly thereafter in November 2021.

150.    Valley Pain provided evidence of its ASC licensure to Aetna shortly thereafter, and upon information and belief Aetna acknowledged receipt of such evidence, but nevertheless continued to deny claims submitted by or on behalf of Valley Pain for services rendered to Aetna Members, serially and without justification.

**V.**

**ERISA CLAIMS**

151.    People who receive their health insurance through a private employment-based benefit plan are typically participants or beneficiaries of plans governed by the ERISA, 29 U.S.C. § 1001 et seq.  Sometimes the ERISA plans are fully insured by health insurers such as Aetna.  Sometimes the plan is self-funded, in which case the plan is financially responsible for the claims arising from that plan.

152.    Plaintiffs are informed and believe that Aetna is the ERISA plan administrator and ERISA fiduciary for the ERISA claims at issue in this Complaint (the Unpaid Claims), or is otherwise a proper ERISA defendant because it "effectively controlled the decision whether to honor or to deny a claim ..."  *Cyr, supra,* 642 F.3d at 1204, and because it "improperly

den[ied] or cause[d] improper denial of benefits." *Spinedex, supra,* 770 F. 3d at 1297.

153.    Upon information and belief, with respect to the self-insured ERISA plans at issue herein, the Other Payors enter into agreements with Aetna to perform administrative and other key responsibilities such as: (a) certifying or authorizing providers' provision of services to members; (b) receiving providers' claims; (c) pricing the claims; (d) processing and administering the claims and appeals; (e) approving or denying the claims; (f) directing whether and how to pay the claims; (g) issuing remittance advices and explanations of benefits; (h) communicating with providers regarding the claims and services; (i) communicating with members regarding the claims and services; and (j) in many instances issuing payment.  On information and belief, these agreements are structured such that Aetna has a financial incentive to keep benefit costs to the funding entity low.

154.    On information and belief, Aetna functions as an ERISA plan administrator with respect to those claims upon which it has exercised delegated authority to provide plan documents to participants and beneficiaries, receive benefit claims, evaluate and process those claims, review the terms of the plan, make initial benefit determinations, make and administer benefit payments, handle appeals of benefit determinations, and serve as the primary point of contact for members and providers to communicate regarding benefits and benefit determinations.

155.    In carrying out these ERISA plan administrator functions, Aetna possesses authority and fiduciary discretion to manage and administer the Other Payors' ERISA plans.

156.    Upon information and belief, no provisions in Aetna's or the Other Payors' benefit plans, whether in their Summary Plan Descriptions or Evidences of Coverage, justified the failure to pay for the medical services provided by Valley Pain to the Aetna Members.

157.    The formal mechanism for a health plan or plan administrator to explain why a claim is denied (meaning that the allowed amount is anything less than full billed charges) is an EOB.  Aetna was required to issue EOBs in conformance with 29 U.S.C. § 1133 as implemented by 29 C.F.R. 2560.503-1.  Specifically, under 29 C.F.R. § 2560.503-1(g), it was required to:

. . . provide a claimant with written or electronic notification of any adverse benefit determination.  Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv).  The notification shall set forth, in a manner calculated to be understood by the claimant –

(i)    The specific reason or reasons for the adverse determination;

(ii)    Reference to the specific plan provisions on which the determination is based;

(iii)    A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv)    A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v)    In the case of an adverse benefit determination by a group health plan or a plan providing disability benefits,

(A)    If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or

(B)    If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

158.    When each of the Unpaid Claims was denied, Aetna serially failed to adequately explain the basis for its decision in a manner calculated to be understood.  In violation of applicable ERISA regulations, Aetna's EOBs failed to state the specific and/or actual reasons for its failure to pay claims, failed to provide any of the details required by the law (including the specific plan provisions purportedly justifying its failure to pay), and failed to request more information if needed as required by law.

159.    The same is true for appeals.  While Aetna's failure to comply with the ERISA regulations when issuing EOBs means that Plaintiffs had no duty to appeal, Plaintiffs and/or

its billing company (ARS or CollectRx) did typically file and pursue appeals of denied claims to which Aetna's responses were equally deficient.   Appeal response letters are subject to parallel requirements as EOBs.  29 C.F.R. § 2560.503-1(j).  *See Ellis v. Met. Life Ins. Co.*, 126 F.3d 228, 237 (4th Cir. 1997) ("The notice requirement for the decision on review must be every bit as explicit as an initial denial notice in terms of providing specific reasons for the continued denial and specific references to the pertinent plan provisions.").   Yet, Aetna's appeal denial letters were just as non-compliant as its EOBs.

160.   Importantly, Aetna's EOBs and appeal denials for the Unpaid Claims did not state that Aetna was denying the Unpaid Claims on a basis other that Plaintiffs purportedly "did not meet provider requirements."

161.   For example, Aetna did not deny claims on the basis that:

(a)   the Aetna Member lacked out-of-network coverage;

(b)   Plaintiffs failed to obtain necessary authorization in advance to provide treatment;

(c)   Plaintiffs had obtained an inadequate assignment of benefits, or that Plaintiffs were not otherwise a valid assignee of benefits with respect to the Unpaid Claims;

(d)   the Aetna Member had not paid Cost Share or that Plaintiffs had not collected the Aetna Member's Cost Share with respect to the Unpaid Claims;

(e)   Plaintiffs' charges were excessive, too high, or inappropriate, which in any event would not be a valid basis to deny claims where an out-of-network provider has no agreed fee schedule with Aetna; or

(f)   On any other basis that would permit Aetna to serially deny the Unpaid Claims.

162.   To the extent there are any Unpaid Claims that were not fully appealed, in light of Aetna's grievous breach of its obligations (including, but not limited to, Aetna's insufficient EOBs and appeal responses) and systematic failures, the ERISA regulations provide that the

claimants "shall be deemed to have exhausted the administrative remedies under the plan ..." 29 C.F.R. § 2560.503-1(l).  Similarly, for the same reason, any appeals by Plaintiffs would have been futile.

163.    Furthermore, such appeals were futile by nature of Aetna's serial denial of claims and appeals submitted on Plaintiffs' behalf on the same unjustified and unsubstantiated basis, as well as Aetna's April and July 2018 communications to ARS and Plaintiffs, which unequivocally indicated that Aetna would not pay claims billed on Plaintiffs' behalf because it was an OTC.  Upon information and belief, Aetna has denied the vast majority (if not all) of the appeals submitted on Valley Pain's behalf since its correspondence to Valley Pain in July 2018.

164.    In light of Aetna's breaches, a *de novo* standard of review should be applied.  But even if some deference were accorded to Aetna's decision not to pay the claims at issue, that decision is clearly erroneous, arbitrary and capricious.

**COUNT ONE**
**(Enforcement Under 29 U.S.C. § 1132(a)(1)(B)**
**For Failure to Pay ERISA Plan Benefits)**
(Plaintiffsagainst Aetna and DOES 1 through 50)

165.    Plaintiffs incorporate all allegations set forth in the above paragraphs as though fully set forth herein.

166.    Plaintiffs allege this claim for relief in connection with claims for treatment rendered to Aetna Members covered by self-funded health benefits plans governed by ERISA. This is a claim to recover benefits, enforce rights, and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B).

167.    When a Plan is insured by, funded by, or administered by Aetna, Aetna must pay benefits to Aetna Members or their assignees pursuant to the Plan's terms, including payments for out-of-network services pursuant to the methodology set forth in the Aetna Member's Plan.

168.    For each of the Unpaid Claims involving an Aetna Member with a Plan governed by ERISA, Plaintiffs are entitled assert a claim to recover benefits, enforce rights and clarify rights to benefits under the terms of the Aetna Member's ERISA Plan pursuant to 29 U.S.C. §

1132(a)(1)(B).

169.   Plaintiffs have standing to assert such claims as the Aetna Members' authorized assignee in connection with the services Plaintiffs provided such Members.

170.   Plaintiffs are informed and believe that each of the ERISA Plans at issue in connection with the Unpaid Claims required Aetna and the ERISA plans to pay for the medical services that Plaintiffs provided to the Aetna Member.

171.   Aetna has breached these ERISA plan provisions by failing to provide the Aetna Members or their assignees the benefits due to them under the terms of their Plans and by arbitrarily denying payment to Plaintiffs for the services rendered to the Aetna Members, without justification and in derogation of the Plans' express terms.

172.   As a result of Aetna's nonpayment of benefits, it is liable to Plaintiffs for the difference between what should have been paid and the amounts that were actually paid, if any, plus applicable interest and attorneys' fees, pursuant to 29 U.S.C. § 1132(g)(1) and any other applicable law, rule, or regulation..

**COUNT TWO**
**(Breach of Contract)**
(By Plaintiffs against Aetna and DOES 1 through 50)

173.   Plaintiffs incorporate all allegations set forth in the above paragraphs as though fully set forth herein.

174.   This Count applies to claims governed by state law, and does not apply to any Unpaid Claims associated with health insurance plans governed by ERISA.

175.   Each of the Aetna Members with Non-ERISA Plans (the "Non-ERISA Aetna Members") is party to a valid and enforceable health insurance contract with Aetna which requires Aetna to pay for authorized and medically necessary services rendered by a licensed healthcare professional.

176.   By, among other things, paying premiums, each of the Non-ERISA Aetna Members provided good and valuable consideration to Aetna in exchange for Aetna's delivery of the benefits set forth in his or her health insurance contract with Aetna, including benefits covering out-of-network services for pain management at facilities such as Plaintiffs.

177.   Plaintiffs are the authorized assignees of each Non-ERISA Aetna Member's rights and benefits under his or her health insurance contract with Aetna and is therefore entitled to assert a claim for Aetna's breach of those assigned contract rights.

178.   The Non-ERISA Aetna Members sought and received medically necessary services from Plaintiffs, and Plaintiffs and/or its billing company sought and received (where necessary) prior authorization from Aetna for such services.

179.   Both the Non-ERISA Aetna Members and Plaintiffs fully performed all their obligations under the health insurance contracts with Aetna, or, to the extent they failed to perform any such obligation, such failure is excused by Aetna's own failure to perform or was waived by Aetna.

180.   In material breach of its obligations under the Non-ERISA Aetna Members' health insurance contracts' terms regarding payment of out-of-network healthcare costs, Aetna has categorically and serially failed and refused to pay for the services rendered by Plaintiffs provided to the Non-ERISA Aetna Members in connection with the Unpaid Claims.

181.   Plaintiffs have been damaged by Aetna's material breaches in that Plaintiffs, as the Non-ERISA Aetna Member's assignee, received none of the benefits or payments Aetna contracted to provide in connection with services rendered to the Non-ERISA Aetna Members.

182.   Accordingly, Plaintiffs are entitled to and seeks damages in an amount to be determined at trial, together with attorneys' fees, costs, expenses, and pre- and post-judgment interest on all amounts awarded at the maximum rate permitted by law.

## COUNT THREE
### (For Breach of the Implied Covenant of Good Faith and Fair Dealing)
(By Valley Pain against Aetna and DOES 1 through 50)

183.   Valley Pain incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

184.   This Count applies to claims governed by state law, and does not apply to any Unpaid Claims associated with health insurance plans governed by ERISA.

185.   As set forth in Exhibit A, each of the Non-ERISA Aetna Members is party to a valid and enforceable health insurance contract with Aetna, each of which contains an implied

covenant of good faith and fair dealing.

186.  Each such Non-ERISA Aetna Member has validly assigned his or her rights and benefits to Valley Pain as a condition of receiving treatment at Valley Pain.

187.  Prior to treating each of the Non-ERISA Aetna Members, Aetna confirmed the Non-ERISA Aetna Member was covered by a plan with Aetna and either authorized service or indicated no authorization was necessary.

188.  As a result, each Non-ERISA Aetna Member (and Valley Pain, as their assignee) reasonably expected and anticipated that Aetna would pay claims submitted by Valley Pain for such medical treatment pursuant to the terms of the Non-ERISA Aetna Member's contract with Aetna.

189.  Aetna's decision not to pay any the Unpaid Claims involving Non-ERISA Aetna Members has been based not on terms excluding coverage in the Non-ERISA Aetna Members' contracts with Aetna, but rather on Aetna's unjustified and undisclosed application of Aetna's own alleged internal policies.

190.  Aetna has systematically and arbitrarily applied its alleged policies to all Unpaid Claims involving Non-ERISA Aetna Members who received medical services at Valley Pain.

191.  Aetna knew or should have known there was no basis for denying the claims submitted by Valley Pain as the assignee of Non-ERISA Aetna Members' benefits and rights.

192.  Through its intentional conduct described herein, Aetna has failed to act in good faith and has deliberately and unfairly deprived Non-ERISA Aetna Members (and Valley Pain, as their assignee) of their expected benefits and reasonable expectations under each of their contracts with Aetna.

193.  Through its intentional conduct described herein, Aetna has breached the implied covenant of good faith and fair dealing.

194.  As a direct and proximate result of Aetna's breach of the implied covenant of good faith and fair dealing, Non-ERISA Aetna Members (and Valley Pain, as their assignee) have been damaged in an amount to be proven at trial.

195.  Accordingly, Valley Pain is entitled to and seeks damages in an amount to be

determined at trial, together with attorneys' fees, costs, expenses, and pre- and post-judgment interest on all amounts awarded at the maximum rate permitted by law.

**COUNT FOUR**
**(For Unjust Enrichment)**
(By Plaintiffs against Aetna and DOES 1 through 50)

196.    Plaintiffs incorporate all allegations set forth in the above paragraphs as though fully set forth herein.

197.    This Count applies to claims governed by state law and as an alternative to Plaintiffs' other causes of action, and does not apply to any Unpaid Claims associated with health insurance plans governed by ERISA.

198.    For Unpaid Claims submitted under Non-ERISA Plans, Aetna has been unjustly enriched by failing and refusing to pay the amounts due and owing to Plaintiffs for services Plaintiffs provided to Non-ERISA Aetna's Members.

199.    Aetna received a benefit by receiving premiums and other consideration from the Non-ERISA Aetna Members, which in turn allowed the Non-ERISA Aetna Members to receive valuable medical care from Plaintiffs with the expectation, by both the Non-ERISA Aetna Members and Plaintiffs, that Aetna would pay the benefits it agreed to pay in exchange for the premiums and consideration provided.

200.    Plaintiffs have been impoverished by providing valuable treatment to the Non-ERISA Aetna Members, which treatment is set forth in or otherwise identifiable through the information contained in Exhibit A, with the expectation of payment, only to be systematically and arbitrarily denied such payment by Aetna.  In providing such care, Plaintiffs incurred costs associated with the use and consumption of materials and supplies, expenditure of employee time and effort, and the cost of capital—all without receiving any payment for its efforts, services, and investments.

201.    There is no justification for Aetna's refusal to pay for the medical treatment provided to Non-ERISA Aetna Members, and it would be inequitable for Aetna to retain the benefits it has received under these circumstances.

202.    Should Plaintiffs' other causes of action fail for any reason, Plaintiffs will not

have been afforded an adequate remedy under law for Aetna's unjust enrichment and Plaintiffs' resulting impoverishment.

203.    Plaintiffs seek and are entitled to an award of damages in an amount equal to the value of the services Plaintiffs provided, in an amount to proven at trial, together with attorneys' fees, costs, expenses, and pre- and post-judgment interest on all amounts awarded at the maximum rate permitted by law.

**COUNT FIVE**
**(For Promissory Estoppel)**
(By Valley Pain against Aetna and DOES 1 through 50)

204.    Valley Pain incorporates all allegations in the above paragraphs as though fully set forth herein.

205.    This Count applies to claims governed by state law, and does not apply to any Unpaid Claims associated with health insurance plans governed by ERISA.

206.    Although Valley Pain does not have a contract with Aetna, Aetna should nonetheless be estopped to deny its promise to Valley Pain in relation to the services the Non-ERISA Aetna Members received at Valley Pain.

207.    As set forth herein, prior to providing services to any of the Non-ERISA Aetna Members with Unpaid Claims, Aetna confirmed to Valley Pain that the Non-ERISA Aetna Member was covered by a plan insured and/or administered by Aetna, that such plan provided the Non-ERISA Aetna Member with out-of-network benefits for the services, and that Valley Pain was authorized to provide such services if authorization was required.

208.    Aetna did not notify Valley Pain, prior to Valley Pain providing services to the Non-ERISA Aetna Members with Unpaid Claims, that Aetna would not honor its obligation to pay for a portion of the cost associated with such services.

209.    To the contrary, through its representations to Valley Pain and by omitting any basis for which Aetna might refuse to pay for such services, Aetna made a promise to Valley Pain that if Valley Pain provided such services for the benefit of Aetna's Members, Aetna would pay for such services in accordance with its obligations under the Non-ERISA Aetna Member's Plan.

210.   Aetna's promises made in connection with services Valley Pain provided to the Non-ERISA Aetna Members was further reinforced by Aetna's payment, on an ongoing basis for over a decade, of substantially similar claims Valley Pain submitted to Aetna for services rendered to Aetna Members.

211.   Aetna unequivocally knew that Valley Pain would rely upon Aetna's representations and promises in agreeing to provide services to the Non-ERISA Aetna Members.

212.   Indeed, the purpose of each pre-treatment communication Valley Pain had with Aetna was to confirm that Aetna would pay Valley Pain for the services Valley Pain rendered to the Non-ERISA Aetna Member prior to providing such services.

213.   Valley Pain actually relied on Aetna's promises to its detriment, by providing services to the Non-ERISA Aetna Members in connection with the Unpaid Claims for which it has received no compensation.

214.   Furthermore, as alleged herein, Valley Pain would not have provided such services or would have required the Non-ERISA Aetna Member to pay cash in advance for his or her services but for Aetna's promise to pay Valley Pain.

215.   Valley Pain's reliance on Aetna's promises was reasonable because, among other things, Valley Pain sought authorization and confirmation of coverage and payment prior to providing services to Non-ERISA Aetna Members for the specific purpose of obtaining confirmation that Aetna would pay Valley Pain in exchange for the services requested by the Non-ERISA Aetna Members, and in light of Aetna's longstanding practice of paying such claims submitted by Valley Pain.

216.   Valley Pain seeks and is entitled to an award of damages in an amount equal to the value of the services Valley Pain provided, in an amount to proven at trial, together with attorneys' fees, costs, expenses, and pre- and post-judgment interest on all amounts awarded at the maximum rate permitted by law.

/ / /

/ / /

**COUNT SIX**
**(For Negligent Misrepresentation)**
(By Valley Pain against Aetna and DOES 1-50)

217.   Valley Pain incorporates all allegations in the above paragraphs as though fully set forth herein.

218.   This Count applies to claims governed by state law, and does not apply to any Unpaid Claims associated with health insurance plans governed by ERISA.

219.   Aetna provided Valley Pain with false or incorrect information or omitted or failed to disclose material information to Valley Pain relating to Aetna's intention to pay for the services Valley Pain provided to the Non-ERISA Aetna Members with Unpaid Claims.

220.   As set forth herein, prior to providing treatment to the Non-ERISA Aetna Members with Unpaid Claims, Aetna confirmed to Valley Pain that the Non-ERISA Aetna Member was covered by a plan insured and/or administered by Aetna, that such plan provided the Non-ERISA Aetna Member with out-of-network benefits for the treatment, and that Valley Pain was authorized to provide such treatment if authorization was required.

221.   Aetna did not notify Valley Pain, prior to Valley Pain providing services to the Non-ERISA Aetna Members with Unpaid Claims, that Aetna would not honor its obligation to pay for a portion of the cost associated with such treatment.

222.   To the contrary, through its representations to Valley Pain and by omitting any basis for which Aetna might refuse to pay for such treatment, Aetna represented that it would pay for such services in accordance with its obligations under the Non-ERISA Aetna Member's Plan.

223.   Aetna intended that Valley Pain rely on its false or incorrect information and material omissions by, among other things, providing services to the Non-ERISA Aetna Members, and Aetna provided such false or incorrect information and material omissions for that purpose.

224.   Aetna, as the insurer and/or administrator of the Non-ERISA Aetna Member's Plans, failed to exercise reasonable care in communicating information to Valley Pain by withholding material information from Valley Pain, misleading Valley Pain, and falsely

informing Valley Pain of information in order to induce Valley Pain to provide treatment to the Non-ERISA Aetna Members under the assumption that Aetna would pay Valley Pain for such treatment.

225.    Valley Pain reasonably and justifiably relied on Aetna's false or incorrect information and material omissions to its detriment, which information Valley Pain sought in order to confirm Aetna would pay for services rendered to the Non-ERISA Aetna Members.

226.    Valley Pain's reliance was particularly reasonable and justified in light of Aetna's payment, on an ongoing basis for over a decade, of substantially similar claims Valley Pain submitted to Aetna for services rendered to other Aetna Members.

227.    As a direct and proximate result of Aetna's material negligent misrepresentations and omissions, Valley Pain has been damaged in an amount to be proven at trial, together with attorneys' fees, costs, expenses, and pre- and post-judgment interest on all amounts awarded at the maximum rate permitted by law.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Aetna and DOES 1 through 50, jointly and severally, as follows:

1.    For compensatory damages in an amount to be proven at trial, plus applicable pre- and post-judgment interest at the maximum rate permitted by law;

2.    For restitution in an amount to be proven at trial, plus applicable interest at the maximum rate permitted by law;

3.    For punitive damages;

4.    For attorneys' fees, costs and, expenses permitted by law; and,

5.    For such other relief as the Court deems just and appropriate.

RESPECTFULLY SUBMITTED this 21st day of July, 2022.

**MAY, POTENZA, BARAN & GILLESPIE, P.C.**

By: /s/*Philip G. May*
    Philip G. May, Esq.
    Devin Sreecharana, Esq.
    Justin R. DePaul, Esq.
    Kathleen A. Shaffer, Esq.
    *Attorneys for Counterdefendant Valley Pain Centers LLC, Valley Pain Centers of Peoria, LLC, and Valley Pain Centers of Arizona, LLC*

**DUNN DESANTIS WALT & KENDRICK, LLP**

By: /s/*Justin V. Niedzialek  with permission*
    Justin V. Niedzialek
    4742 N. 24th Street, Suite 300
    Phoenix, Arizona 85016
    *Attorneys for Arrowhead Outpatient Treatment Center, LLC, Lakeshore Interventional Treatment Center, LLC, Mesa Outpatient Treatment Center, LLC, Tempe Interventional Treatment Center, LLC, Tempe Outpatient Treatment Center, LLC, and West Valley OTC, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 21, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants:

**Jeffrey Sullivan Gleason**
**Nathaniel J Moore**
**J. Haynes Hansen**
Robins Kaplan LLP - Minneapolis, MN
2800 LaSalle Plz.
800 LaSalle Ave.
Minneapolis, MN 55402-2015
jgleason@RobinsKaplan.com
nmoore@RobinsKaplan.com
hhansen@robinskaplan.com

-and-

**Jon Neumann**
**Aaron Lockwood**
Greenberg Traurig, LLP
2375 E Camelback Rd, Suite 800
Phoenix, AZ 85016
neumannj@gtlaw.com
lockwooda@gtlaw.com

-and-

**Paul D. Weller** (admitted pro hac vice)
Robins Kaplan LLP
1325 6th Ave, Suite 2601
New York, NY 10022
T: (212) 980-7400
pweller@robinskaplan.com

*Attorney for Defendants/Counterclaimants Aetna Life Insurance Company; Aetna Incorporated; Aetna Health Incorporated; Unknown Parties 1-50*

**Vinay Kohli**
**Justin B. Cohen**
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067-3010
vkohli@proskauer.com
jbcohen@proskauer.com

-and-

**Hena M. Vora** (Pro Hac Vice)
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
hvora@proskauer.com

*Attorney for Plaintiff/Counterdefendant Advanced Reimbursement Solutions LLC;*
*Unknown Parties 1-513*

**Justin V. Niedzialek**
Dunn DeSantis Walt & Kendrick, LLP
4742 North 24th St.
Suite 300
Phoenix, AZ 85016
jniedzialek@ddwklaw.com

*Attorney for Counterclaim-Defendants Arrowhead Outpatient Treatment Center, LLC;*
*Lakeshore Interventional Treatment Center, LLC; Mesa Outpatient Treatment Center, LLC;*
*Tempe Interventional Treatment Center, LLC; Tempe Outpatient Treatment Center, LLC;*
*West Valley OTC, LLC, Jeremy Buckner, D.C., and*
*Shawn Vigneau, D.C.*

**Timothy J. Eckstein**
**Joseph N. Roth**
**BriAnne Illich Meeds**
OSBORN MALEDON, P.A.
2929 N. Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
teckstein@omlaw.com
jroth@omlaw.com
billichmeeds@omlaw.com

*Attorneys for Defendant/Counterdefendant Thomas Moshiri, M.D.*

**Benjamin J. Fox** (pro hac vice)
Brian R. Michael (pro hac vice forthcoming)
Rachel Simon Feldman (pro hac vice)
Morrison & Foerster LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
GKoltun@mofo.com
BFox@mofo.com
RFeldman@mofo.com

*Attorneys for Counter-defendant*
*Gregory B. Maxon Maldonado*

**Robert H. McKirgan**
**Randy Papetti**
**Jared Sutton**
Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254
rmckirgan@PSWMlaw.com
rpapetti@PSWMlaw.com
jsutton@PSWMfirm.com

*Attorneys for Sean Maldonado*

**Fredric M. Winocur** (Pro Hac Vice)
Ridley,Mcgreevy & Winocur, P.C.
303 16th St., Suite 200
Denver, CO 80202
winocur@ridleylaw.com

*Attorneys for James Allen*

/s/  Elena Cordero