**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valley Pain Centers LLC, et al., | No. CV-19-05395-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Aetna Life Insurance Company, et al., | |
| Defendants. | |

Defendant Thomas Moshiri ("Moshiri") and Defendant Greg Maldonado ("Maldonado") have filed Motions to Dismiss Aetna's Sealed Third Amended Counterclaims ("TACC") (631-1; 627, respectively).[1]

Maldonado seeks to dismiss thirteen counterclaims under Federal Rules of Civil Procedure 12(b)(6) and 9(b). (Doc. 631-1). The counterclaims include: tortious interference with contract; fraud; negligent misrepresentation; violations of the federal Racketeer Influenced and Corrupt Organizations ("RICO"), 18 U.S.C. § 1962(c)–(d); violation of Arizona's RICO, A.R.S. § 13-2314.04; conspiracy to violate Arizona's RICO; civil conspiracy; aiding and abetting a tort; recoupment of overpayments under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3); unjust enrichment; and money had and received. (*See* Doc. 547 at 62–90).

---

[1] The Motions are briefed. (Docs. 656; 657; 660; 663). Both parties requested oral argument on the matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the requests for oral argument. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

Moshiri seeks to dismiss nine counterclaims under Rules 12(b)(6) and 9(b). (Doc. 627). The counterclaims include: tortious interference with contract; fraud; negligent misrepresentation; violations of RICO, 18 U.S.C. § 1962(c)–(d); violation of Arizona's RICO, A.R.S. § 13-2314.04; conspiracy to violate Arizona's RICO; and civil conspiracy. (*See* Doc. 547 at 62–90).

The Court must now decide whether Aetna has pled sufficient factual allegations for plausible claims against Maldonado and Moshiri.

## I.     Background[2]

After receiving leave to amend, Aetna filed its TACC on April 4, 2022.[3] The TACC includes the same thirteen separate claims as the Second Amended Complaint but, among other Counterclaim-Defendants,[4] Aetna added Counterclaim-Defendants Maldonado and Moshiri in their personal capacities. (Doc. 547 at 2, 62–90).

Aetna brings these counterclaims "on its own behalf as the provider of fully-insured health plans" and "as claims administrator for self-funded employer-established health plans." (*Id.* at ¶¶ 49–50). Aetna alleges Counter-Defendants, including Maldonado and Moshiri, engaged "in a multi-faceted out-of-network billing scheme" since at least June 2015 that harmed Aetna and its self-funded plan sponsors. (*Id.* at ¶ 1). This alleged scheme

---

[2] Unless otherwise noted, these facts are taken from Aetna's TACC (Doc. 547). The Court will assume the TACC's factual allegations are true, as it must in evaluating a motion to dismiss. *See Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[3] *See Advanced Reimbursement Sol. LLC v. Aetna Life Ins. Co.*, No. 2:19-cv-05395-DLR (D. Ariz. May 25, 2022) (Doc. 544); Sealed Third Amended Complaint, *Advanced Reimbursement Sol. LLC v. Aetna Life Ins. Co.*, No. 2:19-cv-05395-DLR (D. Ariz. Apr. 8, 2022) (Doc. 547).

[4] Aetna named the following Counter-Defendants in its TACC: Advanced Reimbursement Solutions, LLC; American Surgical Development, LLC; Arrowhead Outpatient Treatment Center, LLC; Lakeshore Interventional Treatment Center, LLC; Mesa Outpatient Treatment Center, LLC; Tempe Interventional Treatment Center, LLC; Tempe Outpatient Treatment Center, LLC; ("collectively "Arrowhead OTCs"); Valley Pain Centers, LLC; Valley Pain Centers of Arizona, LLC; Valley Pain Centers of Peoria, LLC; West Valley OTC, LLC; Gregory B. Maxon Maldonado; Sean Maldonado; James Allen; Eric Church, M.D.; Thomas Moshiri, M.D.; Roger Walker, D.C.; Jeffrey Lynn, D.C.; Jeremy Buckner, D.C.; and Shawn Vigneau, D.C. (collectively, the "Counterclaim Defendants"). (Doc. 547 at 2). Since then, Aetna has settled with the Arrowhead OTCs and Jeremy Buckner, D.C. and Shawn Vigneau D.C. The other Counterclaim Defendants remain in the matter. (Doc. 697).

involved outpatient treatment centers ("OTCs") and several corporations, namely Advanced Reimbursement Solutions, LLC ("ARS")[5] and American Surgical Development, LLC ("ASD").  (*Id.* at ¶¶ 1–8).

Aetna alleges Maldonado directed both ARS and ASD while the "out-of-network billing scheme" was occurring.  (*Id.* at ¶ 4).  Specifically, Aetna claims Maldonado "is the President of ARS [and] the Manager of ASD," (*Id.* at ¶ 31), and was "aware of, participated in, and directed the relevant activities of ARS and ASD, including their relationships with the OTCs."  (*Id.* at ¶ 73).  Aetna alleges Moshiri created North Valley Pain Center and was "aware of, participated in, and directed the relevant activities of the OTCs [he] held an ownership interest in or were officers of, including AZ Pain Solutions, LLC and the Valley Pain OTCs."  (*Id.* at ¶ 74).

Aetna alleges Counterclaim-Defendants' "scheme" was an agreement and conspiracy between all Counterclaim-Defendants to overbill Aetna and its sponsors by:

    (a)    paying providers to recruit other providers and facilities into the scheme;

    (b)    paying providers in exchange for their referral of Aetna members to the OTCs;

    (c)    targeting Aetna members with lucrative out-of-network benefits and interfering with their contracts with Aetna;

    (d)    inflating and misrepresenting the OTCs' rates;

    (e)    misrepresenting the OTCs as ambulatory surgical centers;

    (f)    misrepresenting non-covered services as covered services;

    (g)    billing the facility claims first and with enough procedure codes to bypass the members' out-of-pocket obligations and trigger payment by Aetna;

    (h)    waiving Aetna members' cost-sharing obligations;

---

[5] On September 23, 2022, ARS and ASD filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the U.S. Bankruptcy Court for the District of Arizona, Phoenix Division.  (Doc. 687 at 1).  Under 11 U.S.C. § 362, the filing of a bankruptcy petition stays all further proceedings against ARS Defendants outside the United States Bankruptcy Court.  (*Id.*)

(i)     splitting the OTCs' facility reimbursement with rendering providers; and

(j)     requiring all participants to enter into non-disclosure agreements that would prevent the scheme from being discovered.

(*Id.* at ¶ 98).  The TACC alleges further information and examples regarding these actions. (*Id.* at ¶¶ 98–242).

As to Maldonado, Aetna alleges he, along with others, "directed" ARS, ASD, and any affiliate companies to "provide[] the OTCs with the business model and processes necessary to execute on the out-of-network billing scheme."  (*Id.* at ¶ 99).  It also alleges Moshiri "entered into multiple Marketing Services Agreements with ASD and Maldonado" and was "responsible for bringing multiple providers and facilities into the scheme." (*Id.* at ¶ 105).

The Court previously dismissed Aetna's RICO claims against ARS, ASD, and several of the OTCs because Aetna failed to allege at least two specific instances of mail or wire fraud "per enterprise" and instead lumped the OTCs together without including separate examples for each.  (Doc. 544 at 15).  As to Aetna's fraud claims, however, the Court found Aetna adequately alleged misrepresentations against ARS and ASD and the Treatment Center OTCs "based on the OTCs' use of grossly inflated rates supplied by ARS" and Aetna plausibly alleged reliance on the billed charges.  (*Id.* at 8–11).  As to Aetna's ERISA and state-law claims, the Court also found Aetna provided fair notice of the claims being asserted against ARS, ASD, and the OTCs.  (*Id.* at 16–19).

Maldonado and Moshiri seek to dismiss the counterclaims against them on the basis that neither of them are personally liable for the actions committed by ARS, ASD, or their respective OTCs.  They argue that none of Aetna's counterclaims contain sufficient factual allegations as to Maldonado or Moshiri's involvement.  (Docs. 627; 631-1).

## II.    Legal Standards

As mentioned, Maldonado and Moshiri seek to dismiss Aetna's counterclaims under both Federal Rules of Civil Procedure 12(b)(6) and 9(b).

/ / /

- 4 -

A.      **Rule 12(b)(6) Standards**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).  Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2).  This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  While courts do not generally require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In addition, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

B.      **Rule 9(b)**

The Federal Rules of Civil Procedure apply a heightened pleading standard, however, for allegations of fraud.  Fed. R. Civ. P. 9(b) ("In alleging fraud . . . a party must

state with particularity the circumstances constituting fraud or mistake.").  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotations and citation omitted).  Ordinarily, Rule 9(b)'s heightened pleading standard applies only to averments of fraud: "[t]he rule does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct." *Id.* at 1104.  But "[i]n some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.* at 1103-04.

When multiple defendants sue in connection with an alleged fraudulent scheme, there is no requirement that the pleader identify every instance of fraudulent conduct for every defendant.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  Though "Rule 9(b) does not allow a complaint to merely lump multiple defendants together," it is sufficient in fraud suits involving multiple defendants for a pleader to identify the role each defendant played in the alleged fraudulent scheme.  *Id.* at 764–65.  In cases involving hundreds or thousands of alleged fraudulent transactions, specifying every transaction with the particularity ordinarily demanded by Rule 9(b) "is neither practical nor required." *Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, 2014 WL 1028351, at *4 (E.D. Cal. Mar. 14, 2014).  "When dealing with thousands of instances, it is often the case that a complaint or counterclaim laying out each and every misrepresentation in detail would provide less effective notice and be less useful in framing the issues than would a shorter, more generalized version." *Id.*

"A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  "Rules 8(a) and 9(b) must be read in conjunction with one

another.  [A] [p]laintiff may state allegations of fraud in short, plain statements, provided that said statements put [d]efendants on adequate notice of the conduct alleged to be fraudulent." *Reilly v. Charles M. Brewer, Ltd. Profit Sharing Plan*, 2004 WL 7339615, at *4 (D. Ariz. Sep. 30, 2004).

## III.   Discussion

The two Motions to Dismiss largely rely on the same arguments and therefore the Court will analyze them together.  (Docs. 627; 631-1).  Maldonado contends all thirteen counterclaims brought against him should be dismissed for Aetna's failure to state a claim.  Moshiri contends the same as to the nine counterclaims brought against him.  The Court will consider each in turn, starting with Aetna's fraud counterclaims (three, four, and five through nine) because those counterclaims implicate Rule 9(b)'s heightened pleading standard.

### A.   Counterclaim Three: Fraud

Counterclaim three alleges that Maldonado and Moshiri committed fraud when they billed disputed claims to Aetna that contained material misrepresentations and omissions.  (Doc. 547 at 65–66).  Aetna states that "ARS and ASD both entered into contracts that required them to perform the billing of certain OTCs' out-of-network claims," and so "each of the OTCs, ARS, and ASD [were] directly involved in the billing of the disputed claims to Aetna." (*Id*. at ¶ 275).  Aetna further represents that Maldonado and Moshiri were aware of and participated in these fraudulent practices through their respective roles at the OTCs, ARS, and ASD.  (*Id.* at ¶¶ 277–78).

Movants contend Aetna does not provide sufficient factual allegations to demonstrate the role either of them played in the fraudulent scheme.  (Docs. 631-1 at 12; 627 at 7).  They specifically contend that counterclaim three does not state the required "who, what, where, when and how" of the fraud they allegedly committed.  (*Id*.)

To plead a prima facie fraud claim, Aetna must allege "(1) [a] representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably

contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; [and] (9) his consequent and proximate injury." *Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 631 (Ariz. 1982) (citing *Nielson v. Flashberg*, 419 P.2d 514 (Ariz. 1966)).

### 1.      Maldonado

Aetna alleges "Greg Maldonado, James Allen, and Sean Maldonado were aware of, participated in, and directed ARS's and ASD's material misrepresentations and omission to Aetna . . . ." (Doc. 547 at ¶ 277). Maldonado claims this is the only mention of him "in the fraud claim" and that this is insufficient to put him on fair notice or satisfy Rule 9(b)'s standards. (Doc. 631-1 at 11).

Although this may be the only mention of Maldonado under the fraud claim section, the TACC's general allegations sets forth sufficient allegations as to Maldonado's role in the alleged scheme. The TACC alleges that he helped "form [the] entities that provided the professional medical services that gave rise to the OTCs' facility claims." (Doc. 547 at ¶ 74). Aetna then specifically alleges, for example, that Maldonado was a joint owner of Matrix Anesthesia, LLC and REM Neuromonitoring, LLC, both of which "billed Aetna for the services provided by its contractors at an astronomically inflated rate" while "pocketing the difference." (*Id.* at ¶¶ 96–97). It further details how Maldonado allegedly fit into the scheme, stating he "provided the OTCs with the business model and processes necessary to execute on the out-of-network billing scheme, and [] facilitated, directed, or was personally involved in certain aspects of the scheme." (*Id.* at ¶ 99). The TACC alleges that Maldonado "helped create certain of the OTCs," (*id.* at ¶ 100), and "entered into 'Professional Services Agreements' with medical doctors and chiropractors who could refer patients to ASD-affiliated OTCs." (*id.* at ¶ 113). It further alleges that Maldonado "intended and used the Professional Services Agreements to pay medical doctors and chiropractors kickbacks for their referrals to ASD-affiliated facilities, including the OTCs." (*Id.* at ¶ 116; *see also id.* at ¶ 203).

Detailing the scheme, the TACC alleges "ARS color-coded each potential patient's

out-of-network benefits:" green for good, yellow for acceptable, and red for "weak" to no benefits. (*Id.* at ¶ 124). In a February 2016 email, Aetna alleges that Maldonado directed senior ARS and ASD leadership to, "[s]chedule the greens and yellows. The red's either have no out of network benefits or we can expect very low reimbursement." (*Id.* at ¶ 125; *see also id.* at Ex. 61). Aetna alleges Maldonado, and others, "agreed in writing to inflate and misrepresent the OTC[s'] True Rates" through "Mutual Non-Disclosure Agreements." (*Id.* at ¶¶ 129–30). The TACC continues by alleging Maldonado worked with Eric Church to "run the facility charge before the professions [sic] so it will eat up the deductible," thus "triggering payment by Aetna on the remainder of the facility claims *and* on the entirety of the subsequently billed professional claims." (*Id.* at ¶ 179; Doc. 547-15 at 5) (alterations and emphasis in original). Overall, Aetna alleges the "scheme orchestrated by Greg Maldonado 'caused millions of dollars of losses to Aetna and its self-funded plan sponsors.'" (Doc. 656 at 9 (quoting Doc. 547 at ¶ 20)).

Aetna's allegations allow the Court to draw reasonable inferences that Maldonado was put on fair notice and Aetna has satisfied Rule 9(b)'s standards. These allegations are also a far cry from the generalized allegations of "control" over of a company that courts find are insufficient to allege fraud against corporate directors. And the cases Maldonado cites do not convince the Court otherwise. In *United States v. Corinthian Colleges*, the plaintiff sued a corporation but provided only one supporting factual allegation against the individual defendant of the corporation's illegal activity. 655 F.3d 984, 998 (9th Cir. 2011). This is plainly not the case here. *Eversource Cap. LP v. Fimrite*, concerned alter ego liability, which Aetna states is not the theory under which it brings their claims. 2019 WL 11638377, at *5 (D. Ariz. May 21, 2019).[6] In *Crossfirst Bank v. Vieste SPE LLC*, the plaintiff did not allege what the president did wrong or identify his role in the alleged fraudulent scheme. 2021 WL 2517892, at *3 (D. Ariz. Mar. 31, 2021). As detailed above, Aetna has clearly done so with Maldonado. Accordingly, the Court finds the TACC contains sufficient facts to permit a reasonable inference of knowledge and

---

[6] *See infra* Section III.E(1).

1    fraudulent intent.

2              **2.      Moshiri**

3              Aetna alleges Moshiri was "aware of, participated in, and directed the material

4    misrepresentations and omissions to Aetna by their respective OTCs, ARS, and ASD."

5    (Doc. 547 at ¶ 278).  Moshiri argues that apart from this allegation, Aetna's fraud claim

6    does not present "a single, specific factual allegation" as to Moshiri.  (Doc. 627 at 11).  But

7    the TACC sets forth specific allegations as to Moshiri's role, alleging that based on his

8    knowledge of the fraudulent billing models, Moshiri "identif[ied] and [brought] providers

9    to ARS and ASD."   (Doc. 547 at ¶ 80).  For example, it alleges Moshiri "knew that, by

10   using the ARS/ASD model and causing patients to be billed out-of-network through the

11   Valley Pain OTCs, they would make substantially more than if they billed using the

12   patient's in-network benefits."  (*Id.* at ¶ 219).  And he was "aware of, participated in, and

13   directed their respective OTCs' waiver of Aetna members' cost-sharing obligations."

14   (*Id.* at ¶ 253).

15             It further alleges Moshiri "entered into a Letter of Intent" with certain providers to

16   help set up an OTC to perform injection therapy."   (*Id.* at ¶ 81).   Moshiri further

17   "develop[ed]" and "implement[ed]" its operating agreement, assisted with producing

18   policies and procedures, and provided "[o]ngoing consultation services and referral of

19   patients" to "assure continued success of the OTC."  (*Id.*)  The TACC alleges that Moshiri

20   "received 20% ownership of the OTC" in exchange.  (*Id.*)  The OTC North Valley Pain

21   Center, contracted with ARS and ASD.  (*Id.*)  It also alleges Moshiri "entered into multiple

22   Marketing Services Agreements with ASD and Greg Maldonado and [was] responsible for

23   bringing multiple providers and facilities into the scheme."  (*Id.* at ¶ 105).

24             Aetna's allegations allow the Court to draw reasonable inferences that Moshiri was

25   put on fair notice and Aetna has satisfied Rule 9(b)'s standards.  Accordingly, the Court

26   finds that Aetna has sufficiently alleged a prima facie fraud claim.

27   / / /

28             **B.      Counterclaim Four: Negligent Misrepresentation**

Maldonado and Moshiri likewise argues Aetna does not plead negligent misrepresentation with the requisite degree of particularity.  (Docs. 631-1 at 12; Doc 627 at 7).

To state a negligent misrepresentation claim under Arizona law, Aetna must allege "(1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage."  *In re Arizona Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1055 (D. Ariz. 2018) (quoting *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 n.7 (Ariz. Ct. App. 2014).  Because negligent misrepresentation claims are "governed by the principles of the law of negligence . . . there must be 'a duty owed and a breach of that duty before one may be charged with the negligent violation of that duty.'"  *KB Home Tucson*, 340 P.3d at 411–12 (quoting *Van Buren v. Pima Cmty. Coll. Dist. Bd.*, 546 P.2d 821, 823 (Ariz. 1976)).

### 1.     Maldonado

Aetna alleges Maldonado was "aware of, participated in, and directed ARS's and ASD's material misrepresentations to Aetna . . . ."  (Doc. 547 at ¶ 315).  Maldonado first argues the counterclaim for negligent misrepresentation fails for the same reason the counterclaim for fraud fails, i.e., because Aetna does not plead sufficient factual allegations to support the claim.  (Doc. 631-1 at 13).  But for the same reasons discussed in the fraud section, the Court finds Aetna's factual allegations supporting its negligent misrepresentation claim are sufficient under Rule 9(b).  The Court is further satisfied Maldonado has been made aware of the circumstances for which he will have to prepare a defense, and that Aetna has sufficient pre-discovery evidence supporting its allegations.

Maldonado also argues counterclaim four fails "for the independent reason" that Aetna alleges no facts showing Maldonado "had a duty to disclose to Aetna information material to the claims" and Aetna alleges no direct contact with him that would give rise

to such a duty.  (Doc. 631-1 at 13-14).  Aetna says ARS and ASD raised the same argument to Judge Rayes and he rejected it, holding ARS and ASD owed and breached a duty.  (Doc. 656 at 12).  While true, Judge Rayes' findings as to ARS and ASD do not necessarily apply to Maldonado.  Although Aetna conclusory alleges "the Counterclaim Defendants had a special relationship of trust and confidence toward Aetna that gave rise to a duty to speak and disclose material information regarding the claims being submitted," this does not explicitly claim Maldonado had a duty to disclose information to Aetna.  (Doc. 547 at ¶ 324).  Without more, the Court finds dismissal of the negligent misrepresentation claim against Maldonado under Rule 9(b) is appropriate.  The Court finds the same as to Moshiri.  Aetna may be able to allege a duty, but under the allegations of the TACC, it has not done so.

### C.      Counterclaim Nine: Civil Conspiracy

Under Arizona law, a civil conspiracy requires "two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 36 (Ariz. 2002), *as corrected* (Apr. 9, 2002) (quoting *Baker v. Stewart Title & Trust of Phx.*, 5 P.3d 249, 256 (Ariz. Ct. App. 2000). Thus, Aetna must allege that Maldonado and at least one more individual "agree[d] and thereupon accomplish[ed] 'an underlying tort which the alleged conspirators agreed to commit.'" *Id.* (quoting *Baker*, 5 P.3d at 259).

#### 1.      Maldonado

Aetna alleges Maldonado, along with several other Counter-Defendants, "conspired with each other to unlawfully and deceptively procure funds from Aetna for services that the OTCs were not entitled to . . . through fraud, negligent misrepresentation, and tortiously interfering with Aetna's contracts with members and in-network providers."  (Doc. 547 at ¶¶ 378–79).  Maldonado contends Aetna "lumped together in a single paragraph" thirty counter-defendants, with "no factual basis for Mr. Maldonado's personal responsibility for the torts."  (Doc. 631-1 at 14–15).  Maldonado further contends, "[t]o the extent facts are

alleged against counter-defendants, those facts concern activities of the OTCs or other entities, not Mr. Maldonado personally." (*Id.* at 15).

However, as Aetna points out, the TACC "detail[s] descriptions of the various agreements Maldonado entered to further his scheme" beyond Maldonado's single cited paragraph. (Doc. 656 at 13). As discussed, *supra* Section III.A, Aetna alleges Maldonado was involved in "form[ing] entities that provided the professional medical services that gave rise to the OTCs' facility claims," "conspired . . . to engage their OTCs in the scheme and bill Aetna for the subject facility claims," and jointly owned multiple corporations that "billed Aetna for the services provided by its contractors at an astronomically inflated rate." (Doc. 546 at ¶¶ 73–74, 76–77, 95–97). Aetna further alleges Maldonado entered into "Marketing Services Agreements" with several co-conspirators to "bring[] multiple providers and facilities into the scheme." (*Id.* at ¶¶ 103–11; *see also* Exs. 36–38). And, that ASD and Maldonado "entered into 'Professional Services Agreements' with medical doctors and chiropractors," intending and using these agreements "to pay medical doctors and chiropractors kickbacks for their referrals to ASD-affiliated facilities, including the OTCs." (Doc. 547 at ¶¶ 112–22; *see also* Ex. 57).

Considering these factual allegations, the Court finds Aetna's TACC sufficiently pleads a civil conspiracy counterclaim against Maldonado under Rule 9(b)'s heightened standard.

### 2.    Moshiri

Aetna's alleges Moshiri, along with several other Counter-Defendants, "conspired with each other to unlawfully and deceptively procure funds from Aetna for services that the OTCs were not entitled to . . . through fraud, negligent misrepresentation, and tortiously interfering with Aetna's contracts with members and in-network providers." (Doc. 547 at ¶¶ 378–79). Moshiri argues Aetna provides no factual allegations showing an agreement, only that Moshiri agreed to associate with ARS, ASD, and the OTCs and that his association is insufficient. (Doc. 627 at 11).

The TACC belies Moshiri's contentions. As discussed, *supra* Section III.B, Aetna

1   alleges Moshiri was involved in "form[ing] entities that provided the professional medical
2   services that gave rise to the OTCs' facility claims," "conspired . . . to engage their OTCs
3   in the scheme and bill Aetna for the subject facility claims," and jointly owned multiple
4   corporations that "billed Aetna for the services provided by its contractors at an
5   astronomically inflated rate." (Doc. 546 at ¶¶ 74, 76, 95–97). Aetna further alleges
6   Moshiri entered into "Marketing Services Agreements" with several co-conspirators to
7   "bring[] multiple providers and facilities into the scheme." (*Id.* at ¶¶ 103–11; *see also* Exs.
8   36–38).

9       Considering these factual allegations, the Court finds Aetna's TACC sufficiently
10   pleads a civil conspiracy counterclaim against Moshiri under Rule 9(b)'s heightened
11   standard.

12      **D.      Counterclaims Five through Eight: RICO and RICO Conspiracy**

13      In counterclaims five through eight, Aetna alleges various RICO and RICO
14   conspiracy claims against all Counterclaim Defendants.

15              **1.      State and Federal RICO Claims**

16      To state a plausible RICO claim, Aetna must allege that Maldonado and Moshiri
17   "participate[d] in (1) the conduct of (2) an enterprise that affects interstate commerce
18   (3) through a pattern (4) of racketeering activity." *Eclectic Props. E., LLC v. Marcus &*
19   *Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing 18 U.S.C. § 1962(c)).[7] The
20   pleadings must demonstrate the "enterprise," under element two, "has (A) a common
21   purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the
22   purpose." *Id.* (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

23      Relevant here, because Aetna alleges racketeering activity of mail and wire fraud
24   under 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud) (*see* Doc. 547 at 77), three
25   sub-elements must be alleged: "(A) the formation of a scheme to defraud, (B) the use of
26   the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Id.*

27   ─────────────
[7] Arizona courts have interpreted the state law version of RICO "to mirror the federal RICO
28   statute." *Aviva USA Corp. v. Vazirani*, 632 Fed. App'x 885, 889 (9th Cir. 2015). The Court
     therefore analyzes Aetna's state and federal RICO claims together.

(citing *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986)).

### a.    Maldonado

Maldonado argues Aetna fails to plead with sufficient particularity (1) his alleged role and conduct in support of an alleged enterprise and (2) his conduct committing the predicate wire and mail fraud acts.  (Doc. 631-1 at 16–19).  Aetna says the TACC makes clear Maldonado participated in the affairs of a RICO enterprise because he played the "central role" in conceiving and operating the "enterprise at issue."  (Doc. 656 at 14). Aetna further cites the Court's previous Order to assert it has adequately pled that ARS and ASD engaged in predicate acts of mail and wire fraud. (*Id.* at 15 citing Doc. 544 at 13).

At the outset, Aetna has failed to demonstrate Maldonado's conduct is in support of an "enterprise" as defined by RICO.  Aetna lists at least fourteen purported enterprises in its TACC, presumably to meet element two of its RICO claim.  (Doc. 547 at ¶¶ 334–36). But in their briefing, Aetna later represents "Maldonado played a . . . central role in conceiving and operating *the enterprise* at issue."  (Doc. 656 at 14) (emphasis added). Aetna uses the singular form of the term enterprise but does not specifically identify the "enterprise at issue" among the fourteen listed in its TACC.  Thus, it remains unclear whether Aetna intends to bring its RICO claim with respect to Maldonado's role in a specific enterprise, or otherwise on behalf of his conduct associated with all fourteen enterprises.

"It is unfair to the district court, to other litigants, and to the movant to impose a duty on the district court to 'search and sift the factual record for the benefit of a [one] party.'"  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030–31 (9th Cir. 2001).  The Court also notes the Counterclaim Defendants need notice of what enterprise is at issue.  (Doc. 660 at 10).  Because Aetna has not identified a specific enterprise at issue, a requisite RICO claim element, the Court cannot determine whether Maldonado conducted or participated in the conduct of a RICO enterprise's affairs.

The Court will therefore grant Maldonado's Motion to Dismiss counterclaim five

as to Maldonado because Aetna has not identified the "enterprise at issue."[8] Aetna's RICO counterclaim against Moshiri fails for the same reasons.

### 2.  Conspiracy to Violate State and Federal RICO

Because Aetna has failed to adequately plead a substantive RICO violation, it cannot bring a Section 1962(d) conspiracy claim.  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010); *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy").  The Court will likewise dismiss counterclaim six as to Maldonado and Moshiri.

### E.  Counterclaims One and Two: Tortious Interference with Contract

To state a *prima facie* claim for intentional interference with contract against Maldonado and Moshiri, Aetna must allege: (1) a valid contractual relationship or business expectancy; (2) Maldonado and Moshiri's knowledge of that relationship or expectancy; (3) Maldonado and Moshiri's intentional interference causing a breach or termination of that relationship or expectancy; (4) resultant damage to Aetna; and (5) Maldonado and Moshiri's improper motive or means.  *See Neonatology Assocs., Ltd. v. Phx. Perinatal Assocs. Inc.*, 164 P.3d 691, 693 (Ariz. Ct. App. 2007).[9]  "Although corporate directors and officers may not be held liable for a corporation's intentional torts merely by virtue of the office they hold, they may be held liable for such torts if they have involvement in the tortious acts."  *Sports Imaging of Arizona, L.L.C. v. 1993 CKC Tr.*, 2008 WL 4448063, at

---

[8]  The Court makes no determination as to Maldonado or Moshiri's alleged conduct committing the predicate acts of mail and wire fraud.

[9]  Maldonado argues Aetna's tortious interference with contract claim requires application of state law but Aetna's TACC "does not identify the locations of the counter-parties to Aetna's contracts and thus fails to provide sufficient information for a choice-of-law analysis." (Doc. 631-1 at 20).  As Aetna points out, however, there is no need for the Court to conduct this analysis because Aetna's claim was brought in Arizona against an Arizona resident for conduct that occurred in Arizona. (*See* Docs. 656 at 17; 547 at ¶¶ 29–48 (alleging Maldonado is domiciled in Arizona; the other members of ARS and ASD are domiciled in Arizona; all the doctor Counterclaim-Defendants are domiciled in Arizona; and all the Outpatient Treatment Centers and their members are incorporated in Arizona or domiciled in Arizona)).  Assuming *arguendo* such an analysis must take place, the factors considered in *Bates v. Superior Court*, 749 P.2d 1367, 1370 (Ariz. 1988), as cited by Maldonado, would support Arizona law here.

*12 (Ariz. Ct. App. 2008).

### 1. Maldonado

Maldonado contends Aetna fails to state intentional interference with contract claims, both with member (counterclaim one) and provider (counterclaim two) contracts, because Maldonado is not personally liable for the acts of ARS or ASD.  (Doc. 631-1 at 20–21).  Maldonado further contends "Arizona law prohibits liability solely" based on his status as a "member or manager," and Aetna has failed to "plead facts showing control liability" against him.  (*Id.* at 21–22).[10]  Maldonado says he is only specifically named in two paragraphs under the two tortious interference counterclaims.  (*See* Doc. 547 at ¶¶ 252, 267).

Aetna alleges Maldonado was "aware of, participated in, and directed ARS's and ASD's waiver of Aetna members' cost-sharing obligations.  (Doc. 547 at ¶¶ 252).  Aetna also alleges Maldonado was "aware of, participated in, and directed ARS's and ASD's inducements to Aetna's in-network providers."  (*Id.* at 267).  Maldonado is correct that these are the only two allegations against him under Aetna's tortious inference with contract claims.  Maldonado is wrong, however, to suggest Aetna has pled no facts showing participation in ARS or ASD's interference.  The Court found that Aetna has sufficiently explained Maldonado's involvement at length, including the Professional Services Agreements he signed, which "induced Aetna's in network providers" to breach their contracts with Aetna by "refer[ring] patients to out of network providers.  (Doc. 547 at ¶¶ 198-220).  So, Aetna has alleged sufficient facts for its tortious interference with contract claim.

### 2. Moshiri

Moshiri argues Aetna fails to state intentional interference with contract claims, both with member (counterclaim one) and provider (counterclaim two) contracts, because Aetna alleges no actions regarding the waiver of cost-sharing or interfering with in-network

---

[10] Maldonado also argues Aetna alleges no facts showing alter ego liability.  (Doc. 631-1 at 21).  Aetna does not dispute this point and instead argues it need not piece the corporate veil to hold Maldonado liable for ARS and ASD's torts because Maldonado participated in them.  (Doc. 656 at 18).

providers as to Moshiri.  (Doc. 627 at 5-6).  Moshiri also cites to *SinglePoint Direct Solar LLC v. Curiel* to argue the Court cannot infer improper purpose where Moshiri could have sought to advance his own economic interests.  (*Id.* at 6); 2022 WL 331157, at *14 (D. Ariz. Feb. 3, 2022).

Aetna alleges Moshiri was "aware of, participated in, and directed [his] respective OTCs' waiver of Aetna members' cost-sharing obligations," and was "aware of, participated in, and directed [his] respective OTCs' interference with Aetna's contracts with its in network providers[.]" (Doc. 547 ¶¶ 253, 268).  First, Aetna's tortious interference counts incorporated the preceding paragraphs by reference and those paragraphs articulated Moshiri's role in persuading the providers to breach their contracts with Aetna and use the ARS method for those beneficiaries with out-of-network benefits. (Doc. 547 at ¶¶ 74; Exs 3; 25; 94).  Second, the Court rejects Moshiri's reliance on *SinglePoint* because that case stated a *competitor* does not act improperly if his purpose was in part to advance his own economic interests.  2022 WL 331157, at *14 (emphasis added).  Here, Moshiri is not a competitor.  Nor can he argue he was one.  Aetna has alleged sufficient facts for its tortious interference with contract claim.

Moshiri does not move to dismiss counterclaims ten through thirteen and thus the Court addresses only Maldonado's liability as to these counterclaims.

**F.     Counterclaim Ten: Aiding and Abetting**

Aetna alleges Maldonado aided and abetted in the "commission of torts against Aetna, as set forth herein."  (Doc. 547 at ¶ 385).

To properly plead an aiding and abetting claim in Arizona, Aetna must allege: (1) a primary tortfeasor committed a tort that harmed Aetna, (2) Maldonado knew "that the primary tortfeasor's conduct constitute[d] a breach of duty," and (3) Maldonado "substantially assist[ed] or encourage[d] the primary tortfeasor in the achievement of the breach."  *Temple v. Hartford Ins. Co. of Midwest*, 40 F. Supp. 3d 1156, 1170 (D. Ariz. 2014) (citing *Wells Fargo Bank*, 38 P.3d at 23).  Aetna must further allege that Maldonado had "knowledge of the primary violation" because "aiding and abetting is a theory of

- 18 -

secondary liability." *Wells Fargo Bank*, 38 P.3d at 23 (citing *In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1436 (D. Ariz. 1992)). However, "such knowledge may be inferred from the circumstances." *Id.*

Maldonado argues counterclaim ten does not specify the torts that Maldonado allegedly aided and provides no basis for extending liability to individual defendants on the tort claims. (Doc. 631-1 at 24). Maldonado says the only example of a duty owed to Aetna is based on a claims form—but Aetna has not alleged Maldonado submitted this form or had a duty to do so. (*Id.*) The Court already found the TACC adequately alleges fraud, misrepresentation, tortious interference with contract, and civil conspiracy claims. And it is clear to the Court that Aetna's aiding and abetting claim is based on these underlying torts. Indeed, the TAC alleges "each Counterclaim Defendant knew of the scheme and gave substantial assistance to further the scheme, each Counterclaim Defendant is subject to liability for the torts committed in furtherance of the scheme. (Doc. 547 ¶ 384-90).

### G. Counterclaim Eleven: ERISA

In Counterclaim eleven, Aetna seeks to recover alleged overpayments made to against Maldonado under 29 U.S.C. § 1132(a)(3). Specifically, Aetna alleges it "seeks equitable relief in the form of restitution, equitable liens, and a constructive trust on the amounts overpaid to the OTCs, and by the OTCs to the other Counterclaim Defendants, by the terms of the ERISA Plans." (Doc. 547 at ¶ 396).

To state a plausible ERISA claim, Aetna must allege it is (1) a fiduciary seeking either (2) to enjoin "any act or practice" that violates the ERISA plans or (3) to obtain equitable relief as redress for such violations. *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006) (quoting 29 U.S.C. § 1132(a)(3)).

Maldonado argues Aetna alleges no facts suggesting Aetna or the OTCs made any payments to Maldonado—or that any funds were intended to be paid to Maldonado. (Doc. 631-1 at 23). Maldonado says Aetna cannot seek recovery against his general assets because that constitutes legal relief and not the equitable relief permitted under Section

502(a)(3).  Thus, if an ERISA claim exists, Maldonado says the proper counter-party under the plans' terms is the entity to which the overpayment was made, not him.  (*Id.*)  Aetna, on the other hand, cites to *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.* and argues Section 502(a)(3) has "no limit . . . on the universe of possible defendants."  530 U.S. 238, 246 (2000).

Under *Sereboff*, Aetna can only receive restitution from Maldonado if the funds in question are in his "possession and control," and the payment is from "specific funds" that are "separately identifiable."  *Sereboff*, 547 U.S. at 357.  Aetna alleges the funds it "seeks in restitution from each of the Counterclaim Defendants are 'specific funds.'" (Doc. 547 at ¶ 399).  For example, "ARS and ASD were entitled to specific percentages of the reimbursement paid by Aetna to each OTC on a per-claim basis . . . ."  (*Id.*)  Those funds, Aetna alleges, "upon information and belief . . . remain in the possession or control of the Counterclaim Defendants, and are separately identifiable[.]"  (*Id.* at ¶ 400). Although Aetna appears to seek equitable relief, its bare allegation that the funds remain in possession of Maldonado—based only on information and belief—does not meet the federal pleading standards.  *See Tesi v. ReconTrust N.A.*, 2013 WL 2635613, at *4 (D. Ariz. May 7, 2013) ("[P]leading on information and belief, without more, is insufficient to survive a motion to dismiss.").  The Court will therefore dismiss Aetna's ERISA claim against Maldonado.

## H.    Counterclaims Twelve–Thirteen: Unjust Enrichment and Money Had and Received

In the final counterclaims, twelve and thirteen, Aetna alleges state law claims of Unjust Enrichment (counterclaim twelve) and Money Had and Received (counterclaim thirteen) against all counterclaim defendants.

To state an unjust enrichment claims against Maldonado, under Arizona law, Aetna must allege "(1) the plaintiff conferred a benefit to the defendant; (2) the defendant's benefit is at plaintiff's expense; and (3) injustice would result from allowing the defendant to keep the benefit."  *Physicians Surgery Ctr. of Chandler v. Cigna Healthcare Inc.*, 609 F. Supp. 3d 930, 939 (D. Ariz. 2022) (citing *USLife Title Co. of Ariz. v. Gutkin*, 732 P.2d

579, 584 (Ariz. Ct. App. 1986)).  Arizona law further holds "that the existence of a contract specifically governing the rights and obligations of each party precludes recovery for unjust enrichment."  *USLife Title Co.*, 732 P.2d at 584 (citing *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976)).

To state a money had and received claim, Aetna must allege sufficient facts that "the defendant has received or obtained possession of money of the plaintiff which in equity and good conscience he ought to pay over to the plaintiff."  *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1099 (D. Ariz. 2021) (quoting *Copper Belle Mining Co. of W. Va. v. Gleeson*, 134 P. 285, 287 (Ariz. 1913)).  Money had and received claims are "equitable" in nature, and "akin to an action for unjust enrichment."  *Id.*

Maldonado argues counterclaims twelve and thirteen for unjust enrichment and "money had and received" lack sufficient facts as to Maldonado personally.  (Doc. 631-1 at 24).  Maldonado also says the counterclaims fail to allege an inadequate remedy at law.  (*Id.*)  The Court detailed how the TACC describes Maldonado's personal involvement in the preceding sections.  The pled facts, are sufficient to show how Maldonado  received a benefit.  (Doc. 547 at ¶¶ 405, 406).  Aetna also does not allege there is a valid contract between it and Maldonado.  *Cf. Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) ("[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application").  Thus, the Court finds Aetna has adequately pled an unjust enrichment and money had and received claim.

**IV.   Conclusion**

Maldonado and Moshiri's Motions to Dismiss Aetna's tortious interference with contract, fraud, civil conspiracy, aiding and abetting, unjust enrichment, and money had and received counterclaims (counterclaims one, two, three, nine, ten, twelve, thirteen) are denied.  The Court finds that Aetna has failed to sufficiently plead an ERISA counterclaim (counterclaim eleven), a negligent misrepresentation counterclaim (counterclaim four), and state and federal RICO counterclaims against Maldonado and Moshiri's because of Aetna's failure to identify the enterprise at issue and will dismiss those claims (counterclaims five,

six, seven, and eight).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Thomas Moshiri and Defendant Greg Maldonado's Motions to Dismiss (Docs. 627; 631-1) Aetna's Third Amended Counterclaims are **granted in part**, as to Aetna's state and federal RICO counterclaims (counterclaims five, six, seven, and eight), its ERISA counterclaim (counterclaim eleven), and its negligent misrepresentation counterclaim (counterclaim four) and **denied in part**, as to Aetna's tortious interference with contract, fraud, civil conspiracy, aiding and abetting, unjust enrichment, and money had and received counterclaims (counterclaims one, two, three, nine, ten, twelve, thirteen).

**IT IS FURTHER ORDERED** that a Rule 16 Scheduling Conference will be set by separate Order pursuant to the Court's ruling at the June 6, 2022, hearing (Doc. 652).

Dated this 31st day of March, 2023.

Honorable Diane J. Humetewa
United States District Judge